**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Burrell BILLINGSLEA,
Defendant-Appellant.**

No. 78–5651.

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1979.

---

P. Bruce Kirwan, Federal Public Defender, Atlanta, Ga., for defendant-appellant.

Karen A. Rebrovich, William G. Otis, Washington, D. C., for plaintiff-appellee.

Before COLEMAN, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant, a college graduate and recipient of a master's degree from Yale University, was hired by the Atlanta Board of Education in 1977 to work in its Youth Employment Program. The objective of the program was to employ economically disadvantaged youths residing in the City of Atlanta. Funds for the program were provided by the United States Department of Labor under the Comprehensive Employment and Training Act of 1973 (CETA). Appellant was hired by the Board of Education to implement its summer arts program which was to employ local artists who would in turn instruct disadvantaged students who were paid with CETA funds for attending the classes. Appellant's duties included collecting student time sheets and distributing payroll checks to the students. Appellant's hours of employment under the program were from 8:00 a. m. until 4:30 p. m., Monday through Friday. Each day he was required to sign in and sign out on attendance sheets.

During much of the period that he was being paid with CETA funds, appellant also was employed as an instructor at Atlanta Junior College. In the summer of 1977, appellant taught class two days per week between the hours of 10:00 a. m. and 12:30 p. m. During the fall and winter of 1977, he taught several classes each week during the morning and early afternoon hours. After appellant's supervisor learned, in February 1978, that appellant was working at the Junior College, appellant resigned his CETA position. An eleven count indictment was returned against appellant charging:[1] (1) nine counts of making false statements to a government agency, 18 U.S.C.A. § 1001, in the form of eight attendance sheets which incorrectly stated that appellant had worked a full day at the CETA program when in fact he was teaching class at least part of the day at the Junior College; (2) one count of depositing to his own account student payroll checks totalling $677.38 in violation of 18 U.S.C.A. § 665; and (3) one count of violating 18 U.S.C.A. § 665 by improperly receiving $838.62 in CETA funds for hours not actually worked. Following a jury trial in the United States District Court for the Northern District of Georgia, appellant was convicted on all eleven counts and sentenced to two years imprisonment on each count, the terms to run concurrently.

We have carefully considered appellant's challenge to counts one through nine and find it without merit. With respect to counts ten and eleven, one issue has been raised which requires further discussion.

Under 18 U.S.C.A. § 665, one who "embezzles, willfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a" CETA grant "shall be fined $10,000 or imprisoned for not more than two years, or both; but if the amount so embezzled, mis-

1. Originally, a federal grand jury returned a one-count indictment against appellant alleging one violation of 18 U.S.C.A. § 665. When the case came on for a calendar call the government indicated that it would seek a superseding indictment. The following day the original indictment was dismissed and the grand jury returned the eleven-count indictment under which appellant was prosecuted. We find no merit in appellant's argument that the superseding indictment should have been dismissed because it was a product of "prosecutorial vindictiveness." Brief for Appellant at 17.

applied, stolen, or obtained by fraud does not exceed $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both." The critical language for purposes of this appeal is that which makes the grade of the offense dependent on the value of the property taken. In count ten of the indictment the government alleged value in excess of $100 by adding together the value of several days' pay improperly received by appellant between June 27, 1977 and February 15, 1978. Apparently, appellant's pay per day was well below $100.[2] Count eleven charges appellant with having unlawfully obtained $667.38 by depositing seven different student paychecks to his personal bank account. None of the checks exceeded $100 in value. Appellant argues that each hour for which he should not have been paid and each student check deposited to his account constitutes a separate misdemeanor offense, and, therefore, that it was improper to allow the government to aggregate the offenses in order to reach the amount needed to support a felony.

▪ The law of this Circuit is that separate takings punishable individually as misdemeanors cannot be aggregated to make up one felonious taking. *Cartwright v. United States*, 146 F.2d 133 (5th Cir. 1944); *accord, United States v. DiGilio*, 538 F.2d 972, 981 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). In *Cartwright*, the defendant was convicted

of stealing government property in violation of 18 U.S.C.A. § 82. The statute treated the taking of property worth more than $50 as a felony. In reversing the defendant's conviction the Court stated:

> While the evidence does, we think sufficiently show that the value of all the articles enumerated in the indictment as taken was in excess of $50, it conclusively establishes not that all of these articles were taken at one time, but that they were taken as the result of *single or separate larcenies* and it is settled law that *the value of things taken in separate larcenies cannot be aggregated to make up one felonious larceny.*

146 F.2d at 135 (emphasis added).

While this passage would seem to end our inquiry, we note that the precise holding in *Cartwright* was that separate larcenies may not be aggregated. Thus, the issue with respect to both counts ten and eleven becomes whether the several acts alleged in each count constituted separate offenses, in which case they should have been charged in separate misdemeanor counts, or whether appellant committed only one offense in depositing the seven checks and one offense in accepting pay for time not actually worked, in which case a single count for each should have been charged.

We note at the outset that there is little in the way of legislative history or rules of statutory construction to aid us in resolving this issue.[3] Similarly, we have been unable

---

2. Appellant's net pay for each two-week period was approximately $300. Tr. at 114–15.

3. We note at this junction that the Supreme Court's decision in *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952) is not controlling here. *Universal* involved construction of certain provisions of the Fair Labor Standards Act. The defendant was charged with 32 violations of the Act: 6 for failure to pay minimum wages, 20 for failure to pay sufficient overtime, and 6 for failure to comply with record-keeping requirements. Each of the first 26 counts charged one week's worth of violations. The last 6 charged 2 violations each as to 2 employees. 344 U.S. at 219, 73 S.Ct. 227. The government claimed that the multi-count indictment was proper because the statute was meant to punish each breach of the employer's

statutory duty. The district court, rejecting this argument, held "that it is a course of conduct rather than the separate items in such course that constituted the punishable offense," and ordered consolidation of the 32 counts into 3 counts. On appeal, the Supreme Court confined itself to determining what Congress had intended the proper *unit of prosecution* to be. *Id.* at 220–21, 73 S.Ct. 227. Affirming, the Court concluded that Congress meant to "treat as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single impulse." *Id.* Because the decision rested on the Court's interpretation of the legislative history of the Fair Labor Standards Act, and because *Universal* appears to have been given limited application, *see Gore v. United States*, 357 U.S. 386, 391, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1957); *United States v. Cohen*, 384 F.2d 699, 700 (2d

to find opinions of this or any other circuit which squarely face this issue in the context of section 665 or other similar statutes. There are, however, several cases in which the propriety of including *multiple* counts in an indictment was challenged. We will briefly review these cases to determine whether they shed any light on the present problem. In *United States v. Windom*, 510 F.2d 989 (5th Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 121, 46 L.Ed.2d 91 (1975), the defendant was convicted on eight counts of publishing and uttering government checks bearing forged endorsements in violation of 18 U.S.C.A. § 495. On appeal to this Court, defendant argued "that since all eight checks were uttered at the same time to the same recipient he should not have been prosecuted, convicted, and sentenced on eight counts, charging each check as the basis for an individual count." 510 F.2d at 994–95. The Court rejected this argument, finding that "[e]ach check was a separate document, requiring a separate endorsement, and thus was uttered individually." *Id.* at 995.[4] In *United States v. Alaimo*, 297 F.2d 604 (3d Cir. 1961), *cert. denied.* 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962), the defendant was charged with 34 counts of accepting money from an employer in violation of the Taft-Hartley Act, 29 U.S. C.A. § 186(b), (d). Again, the contention of

the defendant was that but one offense had been committed. Finding the circumstances analogous to cases involving several instances of bribery by the same defendant, the Third Circuit held: "each time the defendant received a check from the company he was doing that which the statute forbade." 297 F.2d at 605–06 (citing *Biddle v. Wilmot*, 14 F.2d 505 (8th Cir. 1926)). This approach has been expressly followed by at least two other circuits in similar cases. *See United States v. Anderson*, 165 U.S. App.D.C. 390, 509 F.2d 312 (D.C.Cir. 1974); *United States v. Donovan*, 339 F.2d 404 (7th Cir. 1964), *cert. denied*, 380 U.S. 975, 85 S.Ct. 1338, 14 L.Ed.2d 271 (1965); *United States v. Keegan*, 331 F.2d 257 (7th Cir.), *cert. denied*, 379 U.S. 828, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964). In a similar manner, the Third and Sixth Circuits have upheld multiple-count indictments where it was concluded that several acts of embezzlement by the defendants could not be viewed as "but one course of conduct." *See United States v. Stubin*, 446 F.2d 457 (3d Cir. 1971); *Decker v. United States*, 378 F.2d 245 (6th Cir. 1967).

The common point of the foregoing cases is that, in each, the court concluded that for each instance the defendant did the complete act condemned by the statute he could

---

Cir. 1967); *United States v. Guterma*, 281 F.2d 742, 752–53 (2d Cir.), *cert. denied*, 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960), we do not feel that it controls the decision in this case.

We also note the inapplicability of the "same evidence" test, which governs where the question is whether a single transaction may give rise to separate punishments or prosecutions under separate statutes, *see Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), and the double jeopardy cases which discuss the propriety of multiple prosecutions under the same statute for separate and discrete acts, *see Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915); *Burton v. United States*, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906).

4. In a concurring opinion, Judge Rosenn of the Third Circuit, sitting by designation, expressed the view that only one transaction had oc-

curred and, therefore, only one count should have been charged. 510 F.2d at 995. (Rosenn, J., concurring). *Accord, United States v. Driscoll*, 454 F.2d 792, 801 (5th Cir. 1972) (transportation in interstate commerce of 2 falsely made or forged checks only 1 violation of 18 U.S.C.A. § 2314). Judge Rosenn relied on *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), wherein the Supreme Court held that transporting 2 or more women in interstate commerce on the same occasion constituted only one violation of the Mann Act, 18 U.S.C. § 2421. 349 U.S. at 84, 75 S.Ct. 620, 622. In so holding the *Bell* Court stated: "[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . . ." *Id. Bell* is not controlling in this case because our problem is deciding whether multiple transactions should be charged as one or more than one offense, and not whether a single act can be the basis for more than one count.

be charged with a separate crime. Whether these decisions were based on rules of statutory construction, interpretation of legislative intent, or other considerations, is not at all clear. For this reason, they provide little guidance in our search for the proper method of analyzing the problem now before us.

After carefully considering the authorities urged upon us as well as those discovered through our own efforts, we now elaborate on the approach we feel is most appropriate in cases of this type. Generally, the question whether a series of takings[5] constitutes one or more than one offense under 18 U.S.C.A. § 665 must turn on the factual circumstances of each case. While factors such as the temporal and geographical proximity of the several takings may be germane, the focus of the inquiry should be at or near the starting point of the illegal activity. Of critical importance is the state of mind or intent of the actor prior to and simultaneously with the first taking.[6] Closely related, and of equal importance, is evidence of acts done by the accused, either in preparation for the several takings or as integral part of the first taking, which facilitate the subsequent takings or in some way aid the defendant in accomplishing them. Under this approach, therefore, the formulation of a plan or scheme or the setting up of a mechanism which, when put into operation, will result in the taking or diversion of sums of money on a recurring basis, will produce but one crime. Conversely, if all that can be attributed to the accused is an original intent to purloin and the evidence merely shows that this intent was acted on from time to time, the nature of the acts must be measured by the separate takings. We now turn to the separate counts under consideration.

The evidence supporting count ten shows an intent to establish a mechanism for obtaining CETA funds for an indefinite period of time. By accepting a teaching position with the Junior College without the knowledge of his CETA supervisors, appellant created a situation in which he would be paid CETA funds, on a regular and recurring basis, for time he had committed to and intended to, devote to another occupation. He did not merely, from time to time, absent himself from his duties at the CETA program. His single purpose was to receive, illegally, the unearned pay that would automatically come to him through the operation of the scheme. The evidence supports the conclusion that appellant's unlawful receipt of pay on several occasions constituted but one violation of 18 U.S.C.A. § 665. Accordingly, the conviction and sentence on count ten is affirmed.

With respect to count eleven, we have little difficulty in concluding that each time appellant took a student check and deposited it to his own account he was doing the complete act which section 665 prohibits. Cf. *United States v. Windom*, 510 F.2d 989 (5th Cir. 1975) (18 U.S.C.A. § 495); *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975) (31 U.S.C.A. § 231). Each taking may have been the result of one criminal intent, but it has not been shown that the intent was to do more than to commit several separate and distinct misdemeanors. Since we conclude that each misappropriation was a separate offense, under the rule established in *Cartwright, supra*, it was improper to allow the government to aggregate the offenses in order to reach the dollar amount required to sustain a felony under section 665. *Accord, United States v. DiGilio*, 538 F.2d 972 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). The proper remedy in such a case is to remand for misdemeanor sentencing. *See United States v. DiGilio*, 538 F.2d 972, 981 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749

---

5. The analysis we adopt today is meant to apply to any and all of the methods of "taking" proscribed by § 665.

6. We note with approval the position adopted by a number of state courts that a series of larcenies may be properly charged in a single larceny where "there was a continuing impulse, intent, plan, or scheme actuating the several takings." *See* 53 A.L.R.3d 401 (1973).

(1977); *United States v. Mori*, 444 F.2d 240, 246 (5th Cir.), *cert. denied*, 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971); *United States v. White*, 440 F.2d 978, 982 (5th Cir.), *cert. denied*, 404 U.S. 839, 92 S.Ct. 129, 30 L.Ed.2d 72 (1971); *United States v. Horning*, 409 F.2d 424, 426 (4th Cir. 1969); *Robinson v. United States*, 333 F.2d 323 (8th Cir. 1964).

To conclude, we hold that appellant's ongoing conduct in accepting CETA pay for hours worked at the Junior College constituted but one offense and was properly charged as a single felony. With respect to the student paychecks, however, we hold that each deposit was a separate offense and that it was improper to aggregate the offenses to reach the felony jurisdictional amount. Accordingly, the conviction on counts one through ten are affirmed, and we remand for misdemeanor sentencing on count eleven.

AFFIRMED IN PART AND REMANDED IN PART.