**UNITED STATES of America,**

v.

**Edward MOTT, Defendant.**

**No. 84 Cr. 950–CSH.**

United States District Court, S.D. New York.

March 12, 1985.

---

ployer, J. Henry Schroder Bank, in violation of 18 U.S.C. § 656. He moves pursuant to Rule 12(b), Fed.R.Crim.P., for dismissal of the indictment on grounds that 1) the activities alleged in the indictment do not violate § 656, and 2) the indictment duplicitously mixes a number of separate violations, some of which, charged separately, would constitute misdemeanors.

The facts underlying the indictment appear to be these. Defendant was a First Vice President with the bank. As "operations officer" for "trust operations and special services," he assisted clients engaged in "special projects." Apparently the most common of those projects was the conversion of Savings and Loan Associations from mutual to stock companies. Such conversions entailed a number of complex operations, which defendant directed. In order to accomplish these operations, he was given authority to incur expenses on behalf of the clients. Apparently the bank paid for or reimbursed defendant for these expenses, but ultimately, either periodically or upon completion of the project, the expenses were billed to the client. Thus although the bank initially paid for these expenses from its own funds, it never intended to and did not bear ultimate financial responsibility for them. The Government contends that defendant bilked the bank and its clients by submitting excessive and improper expense bills.[1]

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the U.S.; Mary T. Shannon, Asst. U.S. Atty., New York City, of counsel.

Harry E. Youtt, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant is accused in a two count indictment of embezzling funds from his em-

I.

The defendant claims, and the Government does not dispute, that the bank was directly reimbursed for approximately ninety percent of these expenses by the clients. Further, both the clients and the bank understood that the expenses were incurred on behalf of the clients and were paid by the bank as a convenience. The bank did not intend to, and did not, pay them itself as its own business expense. Defendant claims that because the bank never intend-

---

**1.** In the following discussion, I assume only for purposes of this motion that defendant did indeed submit false bills for improper purposes. He apparently claims to have been justified in whatever actions he took, an issue which is a proper subject for trial but must be ignored on this Rule 12(c) motion.

ed to bear ultimate financial responsibility for these expenses, the funds used to pay for them were neither "moneys, funds or credits" of the bank nor "moneys, funds, assets or securities intrusted to the custody or care" of the bank, as required by the statute. Instead, because the bank intended to pass on the expenses, it is argued that they were funds of the bank's clients.

■ Defendant's first argument is that this situation falls outside of the statutory language. It plainly does not. Defendant submitted his bills to the bank and was paid from funds of the bank. It is true that the bank intended to, and subsequently did, seek reimbursement for the funds, but the money with which defendant was paid was the bank's. Only later did the bank seek reimbursement. Thus his behavior falls directly within the statutory language, for the money which he is accused of misapplying came from the bank.

■ Even if it is assumed that, contrary to a literal reading of its language, the statute does not consider to be bank funds those which were to be directly reimbursed by clients, examination of the possible consequences of discovery of defendant's alleged scheme demonstrates that his willful misapplication was nevertheless of bank, not client, funds. The bank was legally responsible for the business-related behavior of defendant, its employee. If a client discovered that some of the bills for expenses purportedly incurred by defendant were falsified or in some other way improper, the client would have been entirely justified in refusing to pay the bills. Whatever the exact terms of the agreement between the clients and the bank, they presumably did not include an open-ended consent by the clients to pay any expense bills submitted by the bank's employees, legitimate or not. The argument must have been only to reimburse legitimate and reasonable expenses. Thus every improper bill submitted was one for which the bank could not reasonably expect to be reimbursed. So long as defendant submitted legitimate bills, he was drawing on, ultimately, the bank's clients' money. Every time he sub-

mitted a fraudulent bill, however, he was drawing on the bank's money, for he was paid money for which the bank could not reasonably expect to be reimbursed. If the bank did submit the bill and receive reimbursement, it was simply lucky. Thus every fraudulent bill was in fact paid out of the bank's money, even if the bank was fortunate enough to escape bearing the loss from the fraud.

■ Defendant's arguments from the statutory purpose fare no better. The purpose of the statute is a general one, to "protect the funds of banks with a federal relationship." *United States v. Barket*, 530 F.2d 181, 186 (8th Cir.1975), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976). As noted, by accepting money from the bank in return for fraudulent expense billings, defendant was placing bank funds at risk. If the fraudulent nature of the billings was discovered, the bank, not the client, would have borne the loss. Thus his actions fall within those which the statute aims to prevent.

Defendant claims that the Government cannot prove an essential element of the offense, his intent to "injure and defraud the bank." *United States v. Giordano*, 489 F.2d 327, 330 (2d Cir.1973). He cites *United States v. Cleary*, 565 F.2d 43 (2d Cir.1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1469, 55 L.Ed.2d 506 (1978). Cleary was a bank officer who, it was alleged, knowingly approved loans to a person who had fraudulently filled out the bank loan forms by falsifying his creditworthiness. The Court of Appeals, noting that "loans of this character are improper only if the lending officer had no reason to expect that the named debtor would repay them," 565 F.2d at 47, reversed a jury charge which permitted a finding of intent to injure to be inferred from Cleary's knowledge that his action exposed the bank to a risk of loss.

■ *Cleary* is simply inapplicable here. The loan there was legitimate, in that the named debtor incurred it and apparently intended to repay it. Some of defendant's billings—for example, for personal ex-

penses—were improper from the start, and the jury could find that he must have known that if he was found out the bank could not reasonably expect to be reimbursed for them. This would provide grounds for finding intent to injure.

## II.

The two counts of the indictment cumulate "over 200" different allegedly fraudulent billings. Some of these were for amounts under $100, and thus alone constituted misdemeanors, and some were for amounts over $100, constituting felonies.[2] Defendant contends that this admixture makes the indictment duplicitous.

The Government's theory is that defendant pursued two schemes to defraud, one involving travel expenses and one apparently involving other types of expenses. The Government acknowledges, however, that the offenses could have been set out individually. It argues that to have indicted for 200 offenses might have unfairly prejudiced defendant.

■ It is not clear that this indictment is duplicitous—or, on the contrary, that it is not multiplicitous. The question of whether a series of incidents should be considered as one offense or a series of individual offenses depends at times on the precise facts of the case, thus presenting a question which cannot be determined until after trial. *See, e.g., United States v. Billingslea,* 603 F.2d 515, 518–520 (5th Cir. 1979). Judged by the test applied in *Billingslea,* the bare bones of the scheme outlined by counsel appear to create separate offenses, but that is not certain. The Government's justification for indicting on two counts rather than one (or any other number), on the other hand, seems at best somewhat confused.

■ To assume for now that each of the offenses could be charged separately raises the problem of duplicity. Rule 8, Fed.R. Crim.P., which requires separate offenses to be charged separately, can be relaxed in appropriate circumstances. *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). The important inquiry is whether combining the offenses creates a risk of the type of unfairness against which the rule was meant to guard. As set out in *Margiotta,* 646 F.2d at 733, the primary risks include a general verdict of guilt which hides a finding of guilty as to one offense and not guilty as to another, a lack of unanimity as to any one offense, inadequate notice, and difficulty in ascertaining the scope of double jeopardy protection.

In view of the Government's thorough pre-trial disclosures, I do not view the latter two risks as significant, nor does defendant argue them to be. There are risks, however, that the jury may not unanimously agree on the improper nature of any one particular expense billing or that the jury may unanimously settle upon a bill of under $100 and yet convict on the felony count.[3]

■ The Government sensibly argues that these risks may be avoided through the use of jury instructions requiring a unanimous finding of at least one individual improper billing in excess of $100 on each count. Ordinarily the fact that prejudice from a duplicitous indictment could be avoided would not necessarily be grounds for permitting it to stand. In these circumstances, however, I believe that permitting the indictment to stand is the least prejudicial course. If it is assumed that each

**2.** The dichotomy arises from the wording of 18 U.S.C. § 656, which, after providing penalties of a $5000 fine or five years' imprisonment or both, goes on to say:

"... but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, [defendant] shall be fined not more than $1000 or imprisoned not more than one year, or both."

**3.** Arguably the jury need not find a single billing of over $100 if all billings were pursuant to a common scheme and the total exceeds $100. *See United States v. Davis,* 592 F.2d 1325, 1329 n. 4 (5th Cir.1979). The Government, however, does not urge this theory, and I do not reach it.

billing is a separate offense, strict compliance with Rule 8 would require the Government to set out over 200 counts. Such a tremendous indictment might well prejudice the defendant in the eyes of the jury in ways which, unlike the risk presented by the two-count indictment, cannot be thoroughly cured by an appropriate charge. Faced with two risks of prejudice, one more certainly curable than the other, I choose the curable one and will permit the current indictment to stand.

Because the question of multiplicity which I raised above is one which turns on the facts of the case, *Billingslea, supra,* 603 F.2d at 520; *United States v. Brown,* 688 F.2d 1112, 1120 (7th Cir.1982), and may be cured by merger at the end of trial, *United States v. Reed,* 639 F.2d 896, 904 n. 6 (2d Cir.1981), I need not address it now. I do not believe that the existence of two counts where one is appropriate—if such is the case—will prejudice defendant at this point.

The motion is denied.

It is SO ORDERED.