**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bardon BLIZZARD, Jr., a/k/a Buzz**
**Blizzard, Defendant–Appellant.**

**No. 93–5279.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 10, 1994.

Decided June 20, 1994.

**ARGUED:** Daniel G. Grove, Keck, Mahin & Cate, Washington, DC, for appellant. Michael Edward Rich, Asst. U.S. Atty., Alexandria, VA, for appellee.

**ON BRIEF:** John M. Craig, Keck, Mahin & Cate, Washington, DC, for appellant. Kenneth E. Melson, U.S. Atty., Alexandria, VA, for appellee.

Before HAMILTON and LUTTIG, Circuit Judges, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. District Judge WILSON wrote the opinion, in which Judge HAMILTON and Judge LUTTIG joined.

---

## OPINION

WILSON, District Judge:

Appellant, Bardon Blizzard, Jr., appeals his conviction of concealing and retaining stolen government property in violation of 18 U.S.C. § 641.[1] He maintains that the prosecution against him is barred by the five year statute of limitations of 18 U.S.C. § 3282 which provides:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

His appeal presents the sole question of when that five year statute of limitations begins to run for the offense of concealing and retaining stolen government property. The district court held that concealing and retaining stolen government property is a continuing offense and that the statute of limitations does not run during possession of the property. *United States v. Blizzard*, 812 F.Supp. 79, 81 (E.D. Va.1993). We agree and affirm.

### I.

The facts are not in dispute. From about January 1981 until about October 1982, Blizzard was a Lieutenant Colonel on active duty in the United States Army and was assigned to a highly classified position in an Army agency whose organization, operation, and mission were also highly classified. About April 1, 1981, Blizzard signed a letter purportedly authorizing a captain under his command, Michael Lynn Smith, to purchase weapons and equipment for official use. On various occasions from about May 1981 until about October 1982, Smith traveled from Arlington, Virginia to Fayetteville, North Carolina in an official duty and travel status to purchase firearms, ammunition, and other items from Quakerneck Gun Exchange ("Exchange"), a federally licensed firearms dealer. Smith presented the letter to Exchange on each occasion, eventually purchasing 374 firearms with government funds. Smith and Blizzard divided 331 of the firearms between them and turned over the remaining 43 to the Army. Using government funds, Smith also purchased a Rolex watch for Blizzard.

On October 15, 1987, fifteen of the firearms and the watch were seized in a search of Blizzard's home. Blizzard admitted that he took possession of the property between May 1981 and October 1982 knowing that it was stolen or embezzled government property. The government charged Blizzard in a nine count information.[2] Count two charged that on or about October 15, 1987 Blizzard concealed and retained the fifteen firearms and the watch and that those items had a total value of $7,461.21. Blizzard unsuccessfully sought to dismiss count two of the Information based upon the five year statute of limitations. The district court held that concealing and retaining stolen property is a continuing offense and that the statute of limitations had not run. Pursuant to a plea agreement in which all counts but count two were dismissed, Blizzard entered a conditional plea to count two, preserving his statute of limitations defense, and this appeal followed.

---

1. That section provides in part:
   Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
   Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—[Shall be fined or imprisoned.]
   \* \* \* \* \* \*
   18 U.S.C. § 641 (1976). Using the language of count two of the Information, we refer to the offense of conviction as "concealing and retaining." Section 641 is not written conjunctively, however. Consequently, under count two Blizzard could have been convicted of retaining stolen government property whether or not he concealed it.

2. The Information was filed on November 13, 1992, more than five years after the date the property was seized, October 15, 1987. However, on October 2, 1992, Blizzard voluntarily signed a waiver of his statute of limitations defenses for the period from October 2, 1992 through November 19, 1992.

## II.

Our analysis of whether the offense of concealing and retaining stolen government property is a continuing offense is guided by *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).[3] *Toussie* held that the offense of failing to register for the draft was not a continuing offense and that the return of an indictment against *Toussie* more than five years after the date he was required, but failed, to register was untimely under 18 U.S.C. § 3282. The Court noted that the purpose of the criminal statute of limitations is to protect individuals from having to defend conduct of the "far-distant past." *Id.* at 115, 90 S.Ct. at 860. Therefore, according to the Court, "criminal limitations statutes are to be liberally interpreted in favor of repose." *Id.* (internal quotations and citations omitted). *See also United States v. Hare,* 618 F.2d 1085 (4th Cir.1980). This means that a statute of limitations normally will begin to run when the crime is complete. According to the Court, these considerations do not mean that there is no vitality to the continuing offense doctrine:

> They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

*Toussie,* 397 U.S. at 115, 90 S.Ct. at 860. *See also United States v. Bailey,* 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). The Court concluded in *Toussie,* however, that the explicit language of the statute did not make failing to register for the draft a continuing offense and that there was nothing in the nature of the offense itself indicating that Congress must have intended for it to be a continuing one. In the Court's view, "[f]ailing to register is not like a conspiracy which the Court has held continues as long as the conspirators engage in overt acts in furtherance of their plot...." *Toussie,* 397 U.S. at 122, 90 S.Ct. at 864.

Mindful of *Toussie*'s lesson that a criminal statute of limitations should be liberally applied in favor of repose, the nature of the offense of knowingly concealing and retaining stolen government property, nevertheless, convinces us that Congress intended for that offense to be a continuing one. Stolen government property is not unlike contraband. The passage of time does not give the defendant a license to possess it. The government may prosecute a person who continues to possess unlawful drugs irrespective of the date he first possessed them. There is no reason to treat differently a person who continues to conceal and retain stolen government property. In either case, the defendant is not subjected to prosecution for acts in the far-distant past. Rather, he is subjected to prosecution for a possessory offense within the five-year statute of limitations. As this court has stated in other, but instructive, contexts—"[p]ossession is by nature a continuing offense...." *Jordan v. Virginia,* 653 F.2d 870, 875 (4th Cir.1980).[4]

Blizzard contends that the offense of "retaining" in violation of section 641 is, in effect, identical to the offense of "withholding" found not to be a continuing offense in *United States v. Irvine,* 98 U.S. 450, 25 L.Ed. 193 (1879). We disagree. *Irvine* involved the failure of a pensioner's attorney to pay the pensioner pension benefits received from the government in the pensioner's behalf. A federal statute made it unlawful to "withhold" a pension from a pensioner. Under

---

3. We, of course, use the word stolen in its broadest sense—wrongfully appropriated from another with intent to convert—not in a narrow or technical sense.

4. The precise question before us has not been decided by any of the federal circuits; there are, however, two district courts that have reached opposite conclusions on the issue. The first to address the question, a pre-*Toussie* case, *United States v. Mendoza,* 122 F.Supp. 367 (N.D. Cal. 1954), held that the offense is not a continuing one. The next to address it, *United States v.*

*Fleetwood,* 489 F.Supp. 129 (D.Or.1980), concluded instead that "the nature of a crime such as concealing and retaining stolen property, where possession is the essence of the offense, is such that Congress must have intended it be treated as a continuing offense." *Id.* at 132. *See also United States v. Frezzo,* 659 F.Supp. 54, 57–58 (E.D.Pa.1987). We find *Fleetwood's* reasoning on the issue persuasive and, in effect, this Court noted its agreement in *United States v. Bauer,* 713 F.2d 71, 74 n. 8 (4th Cir.1983).

that provision, Irvine had an obligation to pay the pensioner in 1870. He was indicted in 1875 and pled the statute of limitations, which at the time was two years. The Supreme Court found that the offense was not a continuing one and that the prosecution was barred.

Although the words "retain" and "withhold" are similar in import, the offenses they describe in their statutory contexts differ markedly. The gravamen of the withholding offense in *Irvine* was the failure to pay, not the continuing possession of someone else's property. Unlike an offense that requires retention of specific, tangible property, the offense of "withholding" a pension requires no continuing possession. In *Irvine,* if the Supreme Court found withholding a pension to have been a continuing offense, the defendant could have been charged with that offense anytime until the pension was paid plus an additional two years (the statute of limitations), irrespective of when the defendant last possessed the funds. Conceivably, a penniless defendant could have been convicted of not paying an amount he was required to pay in the far-distant past. There would have been no temporal relationship between the offense and culpability, a relationship we find to be the hallmark of a continuing offense. In contrast, there is a temporal relationship between the offense of retaining and culpability—the continued possession of stolen government property.

As support for his argument that concealment of stolen government property is not a continuing offense, Blizzard cites an old line of authority, which has been partially overruled by statute, holding that concealment of assets by a bankrupt is not a continuing

offense. *See Warren v. United States,* 199 F. 753 (5th Cir.1912).[5] The court finds that line of authority clearly distinguishable. The offense of concealment by a bankrupt occurs in relation to a bankruptcy proceeding. The bankrupt is required to disclose his assets; his failure to do so is not unlike a false statement under oath. The gravamen of the offense of concealment of assets by a bankrupt, therefore, is not simply the possession of assets, although that is required, but the failure to disclose them in a bankruptcy proceeding.[6] In comparison, the gravamen of the offense of concealing and retaining stolen government property is simply the possession of that property.[7]

### III.

For the foregoing reasons, we conclude that the nature of the offense of "concealing and retaining" stolen government property in violation of 18 U.S.C. § 641 is such that Congress must have assuredly intended for it to be a continuing one. Accordingly, the judgment of the district court is

*AFFIRMED.*

---

5.  18 U.S.C. § 3284 now defines concealment of assets in bankruptcy as a continuing offense and tolls the statute of limitations until "final discharge or denial of discharge."

6.  Although there are separate offenses of concealing assets and making false statements in relation to a bankruptcy proceeding, see 18 U.S.C. § 152; *United States v. Knoll,* 16 F.3d 1313 (2d Cir.1994).

7.  Blizzard also cites various state cases holding that concealing and retaining are not continuing offenses. *See Florida v. Webb,* 311 So.2d 190 (Fla. Dist.Ct.App.), *cert. denied,* 317 So.2d 768

(Fla.1975); *Kansas v. Palmer,* 248 Kan. 681, 810 P.2d 734 (1991); *Nebraska v. Nuss,* 235 Neb. 107, 454 N.W.2d 482 (1990); *Duncan v. Maryland,* 282 Md. 385, 384 A.2d 456 (1978); *North Dakota v. Hersch,* 445 N.W.2d 626 (N.D.1989). We are not persuaded and note, at least that an equal number reach the opposite conclusion. *See Arkansas v. Reeves,* 264 Ark. 622, 574 S.W.2d 647 (en banc), *cert. denied,* 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1069 (1979); *Hawaii v. Temple,* 65 Haw. 261, 650 P.2d 1358 (1982); *Minnesota v. Fernow,* 354 N.W.2d 438 (Minn. 1984); *Pennsylvania v. Farrar,* 271 Pa.Super. 434, 413 A.2d 1094 (1979); *South Dakota v. Lodermeier,* 481 N.W.2d 614 (S.D.1992).