PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.　　　　　　　　　　　　　No. 03-4650

ALFRED SMITH,
　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry Coke Morgan, Jr., District Judge.
(CR-03-13)

Argued: February 27, 2004

Decided: June 24, 2004

Before LUTTIG and MICHAEL, Circuit Judges, and
William D. QUARLES, Jr., United States District Judge
for the District of Maryland, sitting by designation.

Affirmed by published per curiam opinion. Judge MICHAEL wrote
a dissenting opinion.

## COUNSEL

**ARGUED:** Nia Ayanna Vidal, Research and Writing Attorney,
Office of the Federal Public Defender, Norfolk, Virginia, for Appel-
lant. Arenda L. Wright Allen, Assistant United States Attorney, Nor-
folk, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr.,
Federal Public Defender, Larry M. Dash, Assistant Federal Public

Defender, Norfolk, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Norfolk, Virginia, for Appellee.

## OPINION

PER CURIAM:

Appellant, Alfred Smith, appeals his conviction for embezzling, stealing, purloining and converting to his own use funds belonging to the Social Security Administration ("SSA") in violation of 18 U.S.C. § 641. Smith asserts that the indictment against him was unconstitutionally duplicitous, *i.e.*, that it joined two or more distinct and separate offenses in one single count. *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993). When an indictment impermissibly joins separate offenses that occurred at different times, prosecution of the earlier acts may be barred by the statute of limitations. *United States v. Beard*, 713 F. Supp. 285 (S.D. Ind. 1989).

The district court held that aggregation of Smith's individual offenses was proper because each was part of a single scheme or plan. For the reasons that follow, we affirm.

### I.

On January 24, 2003, a Grand Jury returned a one-count indictment against Smith, charging:

> Estelle Smith died on February 4, 1994. The defendant, ALFRED SMITH did not report the death of Estelle Smith to the Social Security Administration and continued on a monthly basis to receive Estelle Smith's monthly Social Security benefits until February 3, 1998. Beginning in or about March 1994, and continuing until in or about February 1998, in the Eastern District of Virginia and elsewhere, the defendant ALFRED SMITH, did knowingly, intentionally and willfully embezzle, steal, purloin and convert to his own use, on a recurring basis, a record, voucher, money and thing of value belonging to the Social Security Administra-

tion, to wit: Social Security Administration benefits issued to Estelle Smith, totaling approximately $26,336.00.

(In violation of Title 18, United States Code, Section 641).

Section 641 provides that theft of property with a value in excess of $1,000 is a felony punishable by a maximum term of imprisonment of ten years. If the property has a value of less than $1,000, the violation is a misdemeanor with a term of imprisonment not to exceed one year. 18 U.S.C. § 641 (2004).

From March 1994 through February 1998, 48 payments were electronically deposited into Smith's joint account with his mother; each deposit was between $525 and $583. In all, Smith received approximately $26,336 after his mother's death.

Smith wrote checks and withdrew funds from the account. When interviewed by SSA agents, Smith admitted writing numerous checks on the account and acknowledged that he knew it was wrong for him to receive the benefit payments after his mother's death.

## II.

The purpose of a statute of limitations is to limit exposure to criminal prosecution following an illegal act. *Toussie v. United States*, 397 U.S. 112, 114 (1970). A statute of limitations protects individuals from having to defend against charges "when the basic facts may have become obscured by the passage of time," and minimizes "the danger of official punishment because of acts in the far-distant past." *Id.* at 114-15.

Statutes of limitations should not be extended "'except as otherwise expressly provided by law.'" *Id.* at 115 (*quoting* 18 U.S.C. § 3282). Normally, the statute of limitations will begin to run when a single criminal act is complete. *Id.* Criminal acts over an extended period, however, may be treated as a "continuing offense" for limitations purposes when a criminal statute explicitly compels that result, or if "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.*

But we must first decide whether Smith's charged conduct was properly aggregated into a single count. In determining whether a series of takings are properly aggregated, the court must examine the intent of the actor at the first taking. *United States v. Billingslea*, 603 F.2d 515, 520 (5th Cir. 1979). If the actor formulated "a plan or scheme or [set] up a mechanism which, when put into operation, [would] result in the taking or diversion of sums of money on a recurring basis," the crime may be charged in a single count. *Id.*

Smith's failure to report his mother's death evidences the intent to establish a mechanism for the automatic and continuous receipt of funds for an indefinite period. Smith's criminal conduct was patterned and methodical. Therefore, the indictment properly aggregated his charged conduct into one count.

The indictment charges the acts of its single count in the conjunctive. *See* J.A. 46-47 (alleging that Smith "did knowingly . . . embezzle, steal, purloin, *and* convert to his own use" the funds at issue) (emphasis added). But given that section 641 lists those acts disjunctively, the government, of course, only was required to prove that Smith's conduct satisfied one of those acts to convict on that count. *See United States v. Brandon*, 298 F.3d 307, 314 (4th Cir. 2002). The indictment, therefore, would be sufficient if *embezzlement*, a distinguishable act, can be charged as a continuing offense.

We think that it can; the nature of embezzlement is such that Congress must have intended that, in some circumstances, it be treated in section 641 as a continuing offense. The term "embezzle" includes "the fraudulent appropriation of property" — *e.g.*, "the deliberate taking or retaining of the . . . property of another with the intent to deprive the owner of its use or benefit" — "by a person . . . into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner." Kevin F. O'Malley *et al.*, *Federal Jury Practice and Instructions*, §§ 16.01, 16.03 (2000 & Supp. 2003) (quoting from and elaborating on "the classic, almost standard, definition of 'embezzlement' . . . given by the Supreme Court in" *Moore v. United States*, 160 U.S. 268, 269-70 (1895)).

Although many state embezzlement statutes require that the embezzled property be acquired through some relationship of trust, it is not

a universal requirement. *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.6 (2d ed. 2003) (noting that while, "in general, [embezzlement] may be defined as: (1) the fraudulent (2) conversion of (3) the property (4) of another (5) by one who is already in lawful possession of it," "*some* statutes limit the scope of embezzlement by requiring that the property be 'entrusted' . . . to the embezzler") (emphasis added). We do not think that section 641 imposes this requirement, a conclusion that is amply supported by a leading Supreme Court case on the scope of embezzlement under federal law, as well as by the interpretations made by other circuits of section 641 in particular. *See, e.g.*, Paul C. Jorgensen, *Embezzlement*, 24 Am. Crim. L. Rev. 513, 514 (1987) ("A defendant accused of violating Section 641's embezzlement provisions initially must have lawfully acquired the property at issue, *although he need not have received it through holding a position of trust or fiduciary relation*.") (emphasis added) (citations omitted).

Indeed, the classic definition of "embezzlement" set forth in *Moore* v. *United States*, 160 U.S. 268, 269-270 (1895) implicitly suggests that lawful possession need not be acquired through a relationship of trust. The *Moore* Court, interpreting a precursor to section 641, defined embezzlement under that statute to be "the fraudulent appropriation of property *by a person to whom such property has been intrusted, or into whose hands it has lawfully come*." 160 U.S. at 270 (emphases added).

If the distinction made by this phrasing were not enough, the reasoning set forth in *Moore* firmly supports the conclusion that a fiduciary relationship is not an essential element of embezzlement. *Moore* involved a challenge to an indictment for embezzlement under the Act of March 3, 1875 ("the 1875 Act") based, in part, on the ground that while the indictment named the defendant as a post office employee, it did not allege that the embezzled government monies "came into the possession of the defendant by virtue of his employment." *Id.* at 270. In assessing the requirements for embezzlement under the 1875 Act, the Court discussed several earlier state and English cases that made the existence of a fiduciary or other employment relationship a necessary element of embezzlement. *Id.* at 270-73.

The *Moore* Court explained that "[t]he ordinary form of an indictment for larceny" simply would require a sufficiently specific "allega-

tion that the defendant stole, took, and carried away certain specified goods belonging to the person named," without regard to a particular relationship between the thief and the victim. *Id*. at 273. Notably, the prohibitions of the 1875 Act "applie[d] to 'any person,' and use[d] the words 'embezzle, steal, or purloin' in the same connection, and as applicable to the same persons and to the same property." *Id*. In contrast, "[t]he cases reported from the English courts and from the courts of the several states have usually arisen under statutes limiting the offense to certain officers, clerks, agents, or servants of individuals or corporations." *Id*. at 272; *see also* LaFave, *supra*, § 19.6 (noting the distinction between the specificity of embezzlement statutes historically and the "modern view" which "is to make it embezzlement . . . fraudulently to convert another's property in one's possession," avoiding "the danger of omitting someone who ought to be included" from the list of persons covered by an embezzlement statute). The Court concluded that cases interpreting the requirements for embezzlement under more specific statutes "are not wholly applicable to a statute [such as the 1875 Act] which extends to *every* person, regardless of his employment." 160 U.S. at 272 (emphasis added). Rather, the *Moore* court, although eventually holding the indictment defective on a different ground, went only so far as to say that, as to the necessary relationship for an embezzlement indictment under the 1875 Act, "the rules of good pleading would suggest, even if they did not absolutely require, that the indictment should set forth *the manner or capacity in which the defendant became possessed of the property*." *Id*. at 274 (emphasis added).

An indictment alleging embezzlement under the current form of that statute, *i.e.*, under section 641, requires no more. Section 641 is indistinguishable from the 1875 Act in all relevant respects; its strictures cover "*whoever* embezzles, steals, purloins, or knowingly converts to his use or the use of another" property of the government. (Emphasis added). Moreover, other circuits have similarly interpreted embezzlement under section 641 in light of *Moore*, and held that lawful possession need not be acquired through any particular relationship. *See United States* v. *Miller*, 520 F.2d 1208, 1211 (9th Cir. 1975) ("Section 641 is not limited to persons who come into possession of property by virtue of a particular fiduciary relationship, but rather applies to all persons, regardless of their employment."); *United States* v. *Davila*, 693 F.2d 1006, 1007 (10th Cir. 1982) (citing *Miller*

and adding that "[u]nder [*Moore*'s] definition [of embezzlement], lawful original possession is enough to support the crime of embezzlement [under section 641]; it is not necessary to prove a breach of fiduciary duty."); *but see*, *e.g.*, *Colella* v. *United States*, 360 F.2d 792, 799 (1st Cir. 1966) (interpreting embezzlement in 29 U.S.C. § 501(c) and concluding that the term "carries with it the concept of a breach of fiduciary relationship").

Our opinion in *United States* v. *Stockton*, 788 F.2d 210 (4th Cir. 1986), which dealt not with section 641 but with 29 U.S.C. § 501(c), does not require a contrary result. Admittedly, the *Stockton* court did say that the extent of "embezzlement" in federal statutes "should be viewed as roughly identical to the scope of the offense as generally interpreted under state law." *Id*. at 215. More importantly, however, after enunciating that general principle, the court went into detail as to what that actually meant as to the requirements of embezzlement in section 641. The *Stockton* court first explained that at the core of embezzlement is the act of conversion, which, of course, requires no relationship of trust. *Id*. at 216. The court then stated that

> [t]he crime of embezzlement builds on the concept of conversion, *but adds two further elements*. First, the embezzled property must have been in the lawful possession of the defendant at the time of its appropriation. Second, embezzlement requires knowledge that the appropriation is contrary to the wishes of the owner of the property.

*Id*. at 216-217 (emphasis added). Notably, the court did not enunciate any requirement that a defendant's lawful possession be acquired through a relationship of trust, despite our recognition only a page earlier that prosecuting conversions made after gaining lawful possession *through some fiduciary capacity* was a motivating force for the creation of many embezzlement statutes.

The fact remains that Congress has seen fit to enact numerous statutes criminalizing various forms of embezzlement, and all indications are that where Congress has thought a particular capacity or relationship to be a necessary element of embezzlement in a given circumstance, it has specified as much in the statute. *See*, *e.g.*, 18 U.S.C. § 656 (2000) (criminalizing embezzlement of a bank's funds by

"[w]hoever, being an officer, director, agent or employee of, or connected in any capacity with [such] bank"); 18 U.S.C. § 666(a)(1)(A) (2000) (proscribing embezzlement by "agent[s] of an organization, or of a State, local, or Indian tribal government" of those organization's or government's funds when those entities receive federal grants); 29 U.S.C. § 501(c) (2000) (proscribing embezzlement of the property "of a labor organization of which [a person] is an officer"). But where, as in section 641, a federal embezzlement statute applies, by its express terms, to *all* persons; does not specify any manner or capacity in which an act of embezzlement must be carried out; and lists embezzlement with other acts that apply to the same persons and property but that, even traditionally, do not require the defendant to have any particular relationship with the property's owner, we should not read a relationship of trust into the definition of embezzlement under that statute. This is especially true when precedent indicates that the prohibited acts in section 641 were not meant to be so narrowly read. *See*, *e.g.*, *United States* v. *Morison*, 844 F.2d 1057, 1077 (4th Cir. 1988) ("Manifestly, as the Court in *Morissette* said[,] [section 641] was not intended simply to cover 'larceny' and 'embezzlement' as those terms were understood at common law but was also to apply to 'acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions.'") (quoting *Morissette* v. *United States*, 342 U.S. 246, 268 n. 28 (1952)).

Accordingly, we believe that if an indictment for embezzlement under section 641 alleges the manner or capacity in which the defendant came into lawful possession of the property that he willfully converted, it is adequate in this respect. The instant indictment satisfies this standard, and is sufficient to fairly inform Smith of the conduct for which he was being charged with embezzlement, among other acts, pursuant to section 641, and to support a claim of double jeopardy in a future prosecution on the same basis.

As a joint owner of the checking account, Smith had legal control over the funds therein, including the ability to withdraw the full amount of such funds. *See* Va. Code Ann. § 6.1-125.9 (Michie 1999). As such, when the government voluntarily placed these funds into the account, they came into his lawful control, *i.e.*, his lawful possession. But that he had lawful possession of the funds — the issue disputed by Smith in his reply memorandum below — did not give him the

right to appropriate them for his own purposes. Thus, it was his lack of legal entitlement to *own* the funds that renders his misappropriation of them after their deposit embezzlement.

Smith's lawful right to control the funds after their initial deposit in his account distinguishes his possession from that which follows a common-law larceny, in that Smith's possession did not require a "trespass in the taking"; rather, the government voluntarily, though incorrectly, continued to deposit his mother's Social Security benefits into their jointly owned checking account after her death. *See* LaFave, *supra*, §§ 19.2, 19.6 (explaining this distinction between larceny and embezzlement); *Moore*, 160 U.S. at 269-70 ("[Embezzlement] differs from larceny in the fact that [with embezzlement] the original taking of the property was lawful, or with the consent of the owner . . . ."). In the present case, however, the indictment can be fairly construed to aver a charge of embezzlement that could be proven, without surprise to Smith, by evidence showing that Smith, having legal possession of the funds as they were initially deposited into his account, then, after realizing that his continued possession was improper, willfully retained the funds for his own use, and maintained that recurring, automatic scheme of embezzlement during the charged period.

Embezzlement is the type of crime that, to avoid detection, often occurs over some time and in relatively small, but recurring, amounts. *See, e.g.*, *MacEwen v. State*, 71 A.2d 464, 468-69 (Md. 1950) ("While embezzlement is sustained by the diversion of a single sum of money at a particular time, in many cases it runs for a long period of time and consists of converting different sums of money on many dates to the use of the thief."). At least in those cases where the defendant created a recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government, and maintained that scheme without need for affirmative acts linked to any particular receipt of funds — cases in which there is a strong "temporal relationship between the [completion of the] offense and culpability," *United States v. Blizzard*, 27 F.3d 100, 103 (4th Cir. 1994) — we think that Congress must have intended that such be considered a continuing offense for purposes of the statute of limitations.

And, of course, that is precisely what Smith has done, a conclusion that is supported by our analysis under *Billingslea*. Accordingly, we

believe that the specific conduct at issue here is more properly charac-
terized as a continuing offense rather than a series of separate acts.
The facts found by the district court were sufficient to prove that he
set into place and maintained an automatically recurring scheme
whereby funds were electronically deposited in his account and
retained for his own use without need for any specific action on his
part, a scheme which continued from his mother's death until pay-
ments were terminated in February of 1998.

This is not to say that all conduct constituting embezzlement may
necessarily be treated as a continuing offense as opposed to merely
"a series of acts that occur over a period of time"; indeed, it may well
be that different embezzlement conduct must be differently character-
ized in this regard. Nor do we lightly dismiss the dissent's citation to
cases from other circuits that might require a different conclusion as
to the application of the "continuing offense" doctrine. We are satis-
fied, however, that in addition to being properly aggregated into a sin-
gle count, the particular kind of embezzlement that occurred in this
case is correctly considered, under *Toussie*, to be a continuing
offense.

Smith's embezzlement scheme concluded on February 3, 1998.
The Grand Jury returned an indictment against him on January 24,
2003, within five years of the final deposit of social security funds.
Smith's indictment, therefore, was timely.

For the reasons discussed above, we conclude that Smith's conduct
constituted a single continuous scheme to embezzle government funds
and was of a nature that Congress must have intended that it be
treated as a continuing offense. Accordingly, the judgment of the dis-
trict court is

*AFFIRMED.*

MICHAEL, Circuit Judge, dissenting:

The majority's opinion concludes that a particular offense, in this
case embezzlement, may be treated as either a continuing offense or
a non-continuing offense for statute of limitations purposes, depend-

ing on how the crime is carried out. *See ante* at 9-10. Because I do not believe this conclusion is consistent with the teachings of *Toussie v. United States*, 397 U.S. 112 (1970), I respectfully dissent. *Toussie* begins with a word of caution from the Supreme Court: "the doctrine of continuing offenses should be applied in only limited circumstances." *Id.* at 115. The Court held that an offense should be considered continuing for statute of limitations purposes only if "[1] the explicit language of the substantive criminal statute compels such a conclusion, or [2] the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* The crime charged in *Toussie*, failure to register for the draft, was not a continuing offense because (1) "there is no language in [the registration] Act that clearly contemplates a prolonged course of conduct," *id.* at 120, and (2) "[t]here is also nothing inherent in the act of registration itself which makes a failure to do so a continuing crime," *id.* at 122.

The majority relies on the second *Toussie* factor — the nature of the crime — to conclude that embezzlement is a continuing offense "at least in those cases where the defendant created a recurring, automatic scheme . . . ." *Ante* at 9. The majority goes on to say that "it may well be that different embezzlement conduct must be differently characterized" for purposes of the continuing offense doctrine. *Ante* at 10. *See also ante* at 10 ("the particular kind of embezzlement that occurred in this case is correctly considered . . . to be a continuing offense"). Under *Toussie*, however, whether an offense is continuing "turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue." *United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991). *See also United States v. Yashar*, 166 F.3d 873, 877 (7th Cir. 1999) (continuing offense doctrine does not apply simply because "the *charged conduct* is continuous in nature"); *United States v. Jaynes*, 75 F.3d 1493, 1506 n.12 (10th Cir. 1996) (same). In other words, whether an offense is continuing in nature does not change depending on the manner in which the offense is committed. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 413 (1980) (escape from prison is continuing offense); *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994) ("possession [of stolen government property] is by nature a continuing offense"); *United States v. Garcia*, 854 F.2d 340 (9th Cir. 1988) (kidnaping is continuing offense).

There is nothing inherent in the act of embezzlement that makes it a continuing offense. *See Toussie*, 397 U.S. at 122. Embezzlement is simply a variant of larceny with the additional element that "the original taking of the property was lawful or with the consent of the owner." *Ante* at 9. The majority says that embezzlement is frequently conducted "over some time and in relatively small, but recurring, amounts." *Id.* But to say that embezzlement is frequently conducted in this way does not alter the substantive (or inherent) nature of the offense. Indeed, the fact that embezzlement can be completed in one distinct transaction undermines the notion that it is inherently a continuing crime. I realize that Congress in some circumstances punishes acts that involve the execution of a scheme, *see, e.g.*, 18 U.S.C. § 1344 ("Whoever knowingly executes . . . a scheme . . . to defraud a financial institution . . . shall be fined . . ."), and in those circumstances the underlying crime might be a continuing offense. *See United States v. Nash*, 115 F.3d 1431, 1441 (9th Cir. 1997) ("Section 1344 punishes the execution of a scheme to defraud or obtain money — language that suggests the violation should be treated as continuing."). But when, as here, the language of the statute ("Whoever embezzles . . . money . . . of the United States") does not "clearly contemplate a prolonged course of conduct," *Toussie*, 397 U.S. at 120, the manner in which the offense is carried out cannot provide justification for finding a continuing offense. By introducing the prospect that an offense may be either continuing or non-continuing, depending on the manner in which it is committed, the majority brings about an unwarranted expansion of the continuing offense doctrine. As the Supreme Court said in *Toussie*, "continuing offenses are not to be too readily found." 397 U.S. 116.

I would resolve this case by applying the principles enunciated in *United States v. Yasher*, 166 F.3d 873 (7th Cir. 1999). There, the Seventh Circuit was presented with facts almost identical to those here. The defendant Yasher was "indicted for a violation of 18 U.S.C. § 666, which makes it a federal crime for an agent of a local government to *embezzle*, steal, obtain by fraud, or otherwise misapply property of that government or agency, that is valued at more than $5000 during any one-year period." *Id.* at 875 (emphasis added). The indictment alleged that Yasher was on the payroll of a local government committee from June 1, 1989, until September 1, 1992. It charged that from September 1, 1991, until September 1, 1992, Yasher received

almost $10,000 in compensation, although he did little or no work. The indictment was returned on August 13, 1997, more than five years after Yasher had received most, but not all, of the compensation. The Seventh Circuit thus had to decide how the statute of limitations applied to an ongoing embezzlement scheme that "straddle[d] the limitations period." *Id.* at 876. The court, relying on *Toussie*, rejected the argument that embezzlement could be treated as a continuing offense merely because it was charged as a continuing course of conduct. *Id.* at 877. It held that the statute of limitations begins to run on embezzlement, like other non-continuing offenses, "once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct." *Id.* at 880.

*Yasher* compels the conclusion that Alfred Smith was indicted for certain conduct that falls outside the five-year statute of limitations. The indictment was returned on January 24, 2003. It says that "beginning in or about March 1994, and continuing until in or about February 1998 . . . Alfred Smith did knowingly, intentionally and willfully embezzle, steal, purloin and convert to his own use, on a recurring basis, a record, voucher, money, and thing of value belonging to the Social Security Administration, to wit: Social Security Administration benefits issued to Estelle Smith totaling approximately $26,336.00." It appears that Smith received these monies in an amount between $525.00 and $583.00 on or about the 3rd of each month. Under 18 U.S.C. § 641 Smith was chargeable with a felony as soon as he embezzled $1000 of the government's money. Therefore, by April 3, 1994, Smith had embezzled enough money to support a felony charge. At that point, the continuing course of conduct with which Smith was charged was complete, and the statute of limitations began to run. The date April 3, 1994, and every other date before January 24, 1998, on which Smith received government money fall outside the five-year statute of limitations. Accordingly, I would vacate the judgment and remand for application of the statute of limitations as set forth in *Yasher*. This does not mean that Smith will automatically avoid punishment. The record indicates that some of Smith's conduct occurred within the applicable limitations period, that is, on or after January 24, 1998. The government would be able to obtain a superseding indictment charging that conduct. Thus, if Smith embezzled $1000 on or after January 24, 1998, he would still be guilty of a fel-

ony. If he embezzled less than $1000 in that period, he would be guilty of a misdemeanor.