UNITED STATES of America, Appellee,

v.

William H. CLEARY and Gustavo Passarelli, Defendants-Appellants.

Nos. 1436, 1441, Dockets 77–1107 and 77–1146.

United States Court of Appeals, Second Circuit.

Argued Aug. 19, 1977.

Decided Oct. 20, 1977.

---

Morton Berger, Spring Valley, N.Y., for defendant-appellant Passarelli.

Daniel H. Murphy, II, New York City (Cowan, Liebowitz & Latman, P. C., New York City, for defendant-appellant Cleary.

Richard Weinberg, Asst. U.S. Atty., New York City, (Robert B. Fiske, Jr., U.S. Atty., for the Southern District of New York; Robert J. Jossen, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND and WEBSTER,* Circuit Judges, and DOOLING, District Judge.**

VAN GRAAFEILAND, Circuit Judge:

In 1975, Gustavo Passarelli had no credit standing at Barclay's Bank of New York. However, he did have relatives, friends and several wholly owned corporations. With the aid of an unprincipled lawyer and a facile pen, he was able to obtain funds from the Bank through loans in the names of several of these individuals and companies.

As a result, he was convicted, after a jury trial in the Southern District of New York, on two counts of knowingly making false statements in loan applications and financial statements for the purpose of influencing the Bank, whose deposits were insured by the Federal Deposit Insurance Corporation.[1] 18 U.S.C. § 1014. He was also convicted of conspiring with the lawyer, Jerome F. Healy, and co-appellant William Cleary, assistant manager of Barclay's New Rochelle branch bank, to violate § 1014 and 18 U.S.C. § 656. Section 656, so far as pertinent, makes it a criminal offense for a bank officer willfully to misapply bank funds. Finally, he was convicted on two counts of aiding and abetting appellant Cleary in the violation of § 656.[2] On appeal, Passarelli challenges his conviction

---

* Of the Eighth Circuit, sitting by designation.

** Of the Eastern District of New York, sitting by designation.

1. Passarelli was acquitted on two counts of making false statements in violation of 18 U.S.C. § 1014.

2. Cleary was charged with ten separate violations of § 656, and Passarelli was charged in seven instances with aiding and abetting these violations. The jury acquitted both on one count. It acquitted Cleary on five others but convicted Passarelli of aiding and abetting on three of them. Passarelli's convictions on these three were set aside by the district judge. It convicted Cleary on one count on which Passarelli was acquitted and on one count where Passarelli was not charged. It convicted both on only two counts.

only on the two substantive counts charging the making of false statements and the two counts of aiding and abetting.

■ Affirmance of Passarelli's convictions for violation of § 1014 is clearly mandated. The Government's proof showed that, in connection with the application for a corporate loan, Passarelli forged the name of another individual as a corporate officer on two financial statements and a promissory note and furnished false information to Healy[3] for incorporation into the financial statements. The individual involved had never been a corporate officer and had not authorized the use of his signature. On the other loan which was supposedly made to one Thomas Powers, Passarelli falsely stated that Powers had purchased a boat from him and that the proceeds of the loan would be used to pay for the boat. Passarelli received half the proceeds of this loan, and the other half went to one Carl French who had forged Powers' name on the application, the note and the check. Mr. Powers had never purchased a boat from Passarelli and had no knowledge of the loan.

■ The district judge instructed the jury correctly that, in order to convict Passarelli, it must find that the false statements were made for the purpose of influencing the Bank's action on the applications and defined the phrase "for the purpose of influencing" as meaning that the person making the false statements intended the Bank to take action because of them. *See United States v. Sabatino,* 485 F.2d 540, 544 (2d Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974). Appellant contends the district judge erred in rejecting his requested instruction that the jury must find his statements were false as to a material matter; *i.e.,* that they had a natural tendency to influence or were capable of influencing the decision of the Bank. This request misstates the law. The essence of the crime was the making of false statements with intent to influence the Bank, and whether or not the Bank was actually induced to rely upon them is irrelevant. *United States v. Goberman,* 458 F.2d 226, 229 (3d Cir. 1972); *Henninger v. United States* 350 F.2d 849, 850 (10th Cir. 1965), *cert. denied,* 382 U.S. 979, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). "It does not lie with one knowingly making false statements with intent to mislead . . . to say that the statements were not influential or the information not important." *United States v. Sabatino, supra,* 485 F.2d at 544, *quoting Kay v. United States,* 303 U.S. 1, 5-6, 58 S.Ct. 468, 82 L.Ed. 607 (1938). In any event, any question of materiality would be for the court, not the jury. *United States v. Bernard,* 384 F.2d 915, 916 (2d Cir. 1967); *United States v. Alu,* 246 F.2d 29, 32 (2d Cir. 1957). There was no error in this portion of the charge, and the convictions on the two false application counts must stand.

■ For reasons which follow, we are reversing Cleary's conviction on the four counts of willful misapplication and remanding for a new trial. Passarelli's conviction as an aider and abetter on two of these counts must therefore be reversed. *Shuttlesworth v. City of Birmingham,* 373 U.S. 262, 265-66, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963); *United States v. Giordano,* 489 F.2d 327, 330 (2d Cir. 1973).

■ Convictions of appellant Cleary on the conspiracy count and the four counts charging misapplication of bank funds are reversed because of errors in the exclusion of evidence and in the charge. The record is devoid of proof that Cleary was aware of the forgeries and false statements.[4] In-

---

**3.** All of the loans from which Passarelli benefited were obtained from the Bank through attorney Healy. Prior to trial, Healy pled guilty to one count charging him with filing a false loan application and testified as a government witness.

**4.** Although Cleary was charged on five counts with filing false statements in violation of 18 U.S.C. § 1014, he was acquitted on all of them.

deed, the Government's witness, Healy, assured Cleary that Cleary was acting properly in making the loans. Cleary knew Healy to be a lawyer and relied upon him as such. There was no evidence that Cleary received any kickbacks or bribes because he approved the loans. *See Giragosian v. United States*, 349 F.2d 166, 169 (1st Cir. 1965). They were within the amount of his loaning authorization, and the procedures which he followed involved, at worst, violations of the Bank's normal operating procedures, violations insufficient in and of themselves to support a conviction.[5] *United States v. Docherty*, 468 F.2d 989, 992–95 (2d Cir. 1972); *Giragosian v. United States, supra*, 349 F.2d at 169.

The thrust of the Government's charge against Cleary was that he approved loans to third persons knowing that the proceeds were going in whole or in part to appellant Passarelli. However, loans of this character are improper only if the lending officer had no reason to expect that the named debtor would repay them; *e.g.*, where the officer knew that the named debtor was fictitious, had not authorized the use of his name, or was incapable of repaying the loan, or where the bank official assured the named debtor that he would not be called upon to repay. *United States v. Gens*, 493 F.2d 216, 221–23 (1st Cir. 1974).

One of the loans at issue on this appeal was made to Joseph Passarelli, appellant Gustavo Passarelli's brother. Defense counsel attempted to inquire of the bank manager whether Joseph Passarelli had offered to repay the loan made in his name and indicated his intention of asking the same question about every borrower. The district judge sustained the Government's objection to the question asked and indicated on several occasions that he would not permit the matter to be pursued with regard to other borrowers. Thereafter he charged the jury, over defense objection, that "even if it was not Mr. Cleary's purpose to injure or defraud Barclay's Bank, if he knew that the natural effect of his actions would be to expose the bank to loss, injury or fraud, the requisite intent is established." He followed this up by charging that the Government need not establish that the Bank suffered any loss and that it was immaterial that moneys, once misapplied, may have been repaid.

These rulings effectively removed from the jury's consideration a very important item of proof bearing on Cleary's intent: *i.e.*, whether he could reasonably have expected that the named borrowers would honor their obligations. Payments or offer of payments by the named borrowers should not be completely disregarded when this issue is under consideration. *See United States v. Matot*, 146 F.2d 197, 198–99 (2d Cir. 1944). Where the question of intent is of supreme importance, where the case is a close one, and where there is no proof that the defendant profited from the transaction in question, testimony bearing on the issue of his good faith should not be excluded. *United States v. Wicoff*, 187 F.2d 886, 890–91 (7th Cir. 1951); *United States v. Matot, supra*, 146 F.2d at 198–99; *cf. United States v. Boyd*, 446 F.2d 1267, 1272 (5th Cir. 1971).

The district court charged that if Cleary knew the "natural effect" of his conduct was to expose the Bank to loss, there was an intent to defraud, and then told the jury that it was immaterial whether the Bank suffered a loss. Once the Government has established a defendant's intent to defraud and the misapplication of funds, the success or failure of his efforts may be immaterial, *see United States v.*

5. The Government offered testimony that Cleary disregarded normal banking procedures in failing to interview borrowers personally and in failing to secure adequate financial statements and collateral security.

*Fortunato*, 402 F.2d 79, 80–81 (2d Cir. 1968), *cert. denied*, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969); and, to this extent, the district judge's charge was correct. However, where the issue of a defendant's intent will be determined in large measure by whether a named debtor was willing and able to repay his loan, proof of actual payment or offer of payment must have some pertinence. *Cf. United States v. Docherty*, *supra*, 468 F.2d at 995. In determining what the "natural" effect of a defendant's conduct may be, the "actual" effect can seldom be without relevance. The jury should have been permitted to consider the latter in the narrow light of the former.

The case against Cleary was a close one. The district judge accurately described Cleary's alleged criminal conduct as "baffling". The interests of justice require that another jury be given the opportunity to determine the question of Cleary's criminal intent, after consideration of all the pertinent facts and under a proper charge from the court.

Convictions of appellant Passarelli on Counts One, Ten and Twelve are affirmed. Convictions of appellants Passarelli and Cleary on Counts Seven and Eight and of appellant Cleary on Counts One, Six and Fourteen are reversed; and on these counts, the matter is remanded for retrial.