**UNITED STATES of America, Appellee,**

v.

**Donal WALSH, Defendant–Appellant,**

**James D'Iorio, Defendant.**

**No. 1938, Docket 97–1094.**

United States Court of Appeals, Second Circuit.

Argued May 1, 1997.

Decided July 14, 1997.

James R. Devita, New York City, Vincent L. Briccetti, White Plains, NY, for Defendant–Appellant.

Cathy Seibel, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Robert E. Rice, Assistant United States Attorney, of Counsel), for Appellee.

Before: MINER and CALABRESI, Circuit Judges, and SHADUR,* District Judge.

* Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

SHADUR, District Judge:

Donal M. Walsh ("Walsh") appeals from his conviction under 18 U.S.C. § 1014 ("Section 1014"), after a jury trial in the District Court for the Southern District of New York (Parker, J.), on one count of knowingly making false statements to a federally-insured bank in connection with his application for a home mortgage loan. Application of the sentencing guidelines ("Guidelines") produced a prison sentence of 12 months and 1 day, a $10,000 fine and a $50 special assessment. On appeal Walsh argues (1) that there was insufficient evidence to allow a jury to find that the false statements on his mortgage application were material and (2) that the trial judge erred in increasing the Guideline offense level for "more than minimal planning" and "obstruction of justice." We affirm.

### Background

Walsh is a lawyer specializing in real estate and estate work who applied for several bank loans between 1988 and 1990, both to fund real estate projects that he was developing with James D'Iorio ("D'Iorio") and to obtain a home mortgage for Walsh himself. In connection with those real estate ventures and loans, both Walsh and D'Iorio were charged in a second superseding indictment filed in June 1996 [1] with six counts of conspiracy, fraud and false statements, while Walsh alone was charged with making a false statement in another commercial loan application. After a four-week trial the jury acquitted Walsh and D'Iorio of all charges except for the single count of making false statements to a federally-insured bank in connection with Walsh's $330,000 home mortgage loan from Roosevelt Savings Bank ("Roosevelt").

As to that Roosevelt loan Walsh retained Elizabeth Neighbors ("Neighbors"), a mortgage broker and former business law student of Walsh's, to prepare the application. Based on information provided by Walsh, Neighbors completed an initial handwritten version and then a typed version of the application, both of which Walsh signed. At trial the United States identified a number of assertedly false statements in and omissions from the document:

1. Walsh's misrepresentation in two places that the source of his $25,000 down payment was savings, when in fact it was borrowed;

2. omission of a preexisting $60,000 loan to Walsh from Vito Ruscigno;

3. omission of a home equity line of credit with about a $60,000 balance;

4. Walsh's misrepresentation that his base monthly employment income was $20,000, when in fact it was closer to half of that amount;

5. Walsh's misrepresentation that he was not a co-maker or endorser on a note; and

6. Walsh's misrepresentation that the house that he was vacating had been rented to D'Iorio's company, in support of which Walsh submitted a sham lease that he claimed constituted the rental agreement.

Though Walsh contested several of those assertions, he conceded (1) that the down payment was borrowed rather than coming from his savings, as the loan application represented to be the case, (2) that his monthly employment income was considerably less than $20,000 [2] and (3) that D'Iorio's company never paid rent, nor did it house employees in the residence, under the questioned lease.

For the reason explained in the next section of this opinion, the United States requested that the trial judge give a jury instruction requiring that the jury find any falsehood to be material in order for it to constitute a Section 1014 violation, and that was done. On October 7, 1996 Walsh and D'Iorio were convicted of violating Section 1014.

1. Both the original and the first superseding indictment, respectively filed in November 1995 and April 1996, were dismissed at the time of sentencing.

2. Walsh suggested that the $20,000 figure would be accurate if it included a one-time payment of $95,000 that he received that year from the refinancing of a building loan—an inclusion that Walsh admits was not intended to fall within the scope of "base employment income."

At Walsh's February 13, 1997 sentencing hearing the district court determined that the Guideline base offense level was 6, to which the judge then added 2 levels because the offense involved "more than minimal planning" and 2 additional levels for obstruction of justice. Because Walsh was in Criminal History Category I, the adjusted offense level of 10 yielded a sentencing range of 6 to 12 months. After the district judge had opted to sentence at the top of that range by imposing a 12–month sentence, Walsh asked for and was granted a 1–day upward departure in order to create a potential for earning "good time" credit.

Walsh appealed the district court's order, which had also required him to surrender on March 13, 1997. We ordered that he remain free on bail pending this appeal, which we ordered to be expedited.

### Materiality of Falsehoods

■ Walsh argues that there was insufficient evidence to support a verdict of guilty under Section 1014 because the alleged falsehoods and omissions were not "material." Whether a Section 1014 violation includes a materiality element was unresolved at the time of trial. Section 1014 does not on its face contain such a requirement:

> Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any application . . . or loan . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

And in *United States v. Cleary,* 565 F.2d 43, 46 (2d Cir.1977) we held that a requested instruction requiring that the jury find materiality "misstates the law." But the *Cleary* position was not shared by most other circuits (see *United States v. Wells,* — U.S. —, — n. 3, 117 S.Ct. 921, 925 n. 3, 137

L.Ed.2d 107 (1997)), and at the time of Walsh's trial the Supreme Court had granted certiorari in *Wells* to resolve the conflict. In light of that pending case, the United States asked that Walsh's jury instructions include materiality among the elements that the government must prove beyond a reasonable doubt—a request that it characterizes as "an excess of caution to avoid a possible reversal and retrial should the Supreme Court hold that materiality was an element of Section 1014."

Four months after Walsh's conviction the Supreme Court resolved the issue in *Wells,* — U.S. at — – —, 117 S.Ct. at 926–31, holding that materiality is *not* an element under Section 1014. Walsh urges that *Wells* does not control here because the doctrines of "the law of the case" and "invited error" prohibit the government from asserting now that materiality is not an element of Section 1014. We need not address those arguments, however, because of the clear evidence demonstrating materiality.

On that score Walsh claims that the evidence was insufficient to support the jury's materiality finding.[3] For that purpose a fact is material "if it 'has a natural tendency to influence, or was capable of influencing, the decision of' the decisionmaking body to which it was addressed" (*Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988), quoting *Weinstock v. United States,* 231 F.2d 699, 701–02 (D.C.Cir. 1956); *Kungys* was requoted with internal quotation marks omitted in *Wells,* — U.S. at —, 117 S.Ct. at 926). And as taught in *United States v. Jones,* 30 F.3d 276, 281 (2d Cir.1994), quoting *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)(other citations omitted):

> Mounting a sufficiency of the evidence challenge is always an uphill battle for a convicted defendant. The principal reason for this is because in examining the merits

---

3. Although *Cleary,* 565 F.2d at 46 had also said that "[i]n any event, any question of materiality would be for the court, not the jury," the district judge here properly included materiality as part of the jury charge in light of the later holding in *United States v. Gaudin,* 515 U.S. 506, — – —, 115 S.Ct. 2310, 2314–20, 132 L.Ed.2d 444 (1995) that all elements of a crime, including materiality, must be submitted to the jury under the Fifth and Sixth Amendments. Thus we do not apply the de novo review reserved for questions of law, but instead operate under a sufficiency-of-the-evidence standard.

of such a contention, an appellate court views the evidence in the light most favorable to the prosecution. We of course must uphold the jury verdict if "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." In those terms the evidence at trial was clearly sufficient to support the jury's finding that Walsh's falsehoods were material.

For example, Roosevelt loan officers Joseph Javitz ("Javitz") and Mary DeRuvo ("DeRuvo") testified that a contract of sale or lease for Walsh's prior residence was a precondition for approval of the mortgage loan. Walsh provided Roosevelt with a lease signed by Walsh and D'Iorio reflecting that Walsh had purportedly rented his house to the Ford D'Iorio Realty Group ("Ford") for one year, for use by Ford's "relocated employees." But there was more than enough evidence at trial to permit a jury to conclude that the lease was no more than a sham: testimony that Ford *had* no relocated employees, that it had no need for the residence and that no payments were made on the lease. And although Walsh and D'Iorio testified that they considered the lease to be binding (although they did not dispute that it was never actually performed), the jury was surely not required to believe their self-serving (and really implausible) testimony.

Similarly, DeRuvo testified at trial that Roosevelt prohibited the use of borrowed funds for the down payment on the residence on which Walsh sought the mortgage. Walsh's mortgage application stated in two different places that the source of the down payment was "savings" and that it had not been borrowed, statements that he concedes were inaccurate.

Even leaving aside the other alleged inaccuracies contained in Walsh's application, those examples alone suffice to support the jury's finding of materiality beyond a reasonable doubt. That being so, Walsh's arguments of "invited error" and "law of the case" are moot. Because Walsh has not even sought to identify any adverse effect from the United States' requested inclusion of materiality as an element of the offense, his attempted invocation of those doctrines has no relevance.

■ In like vein, Walsh's claim that his indictment would be impermissibly amended by the inclusion of a non-required element of materiality is also moot. Even if the evidence of materiality had not been more than ample to support a guilty verdict (as it was), Walsh has not shown any adverse impact from the inclusion of an unnecessary element in the indictment. As we made clear in *United States v. Roshko*, 969 F.2d 1, 5 (2d Cir.1992) (citations omitted):

> [A]n indictment is constructively amended where the proof adduced at trial "broadens the basis of conviction beyond that charged in the indictment." However, a court may narrow an indictment at trial without violating the grand jury clause where "what was removed from the case was in no way essential to the offense on which the jury convicted."

Walsh's challenge to his conviction thus fails on multiple grounds. We must and do affirm the jury verdict.

### *Application of Guidelines*

### 1. *More than Minimal Planning*

■ Walsh challenges his sentence on the ground that the district court erred in applying a 2–level increase for "more than minimal planning" under Guideline § 2F1.1(b)(2)(A). "More than minimal planning" is defined in Guideline § 1B1.1 Application Note 1(f), which states in part:

> "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.

> "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

In our consideration of a more-than-minimal-planning adjustment, "[w]e review a district court's findings of fact for clear error, and

accord due deference to the court's application of the facts to the law" (*United States v. Cropper,* 42 F.3d 755, 758 (2d Cir.1994)). And unless we find an abuse of discretion, "[w]e will not overturn a district court's application of the Guidelines to the facts of the case" (*id.*).

At Walsh's sentencing hearing the district judge identified two predicates for applying the 2–level increase:

> [T]here is, according to my calculations, an increase of two points for more than minimal planning that results from two circumstances: One a series of prior false statements, misleading statements on applications to banks leading up to the misstatements that were made in connection with the Roosevelt Savings Bank application; in addition, there was the use of the falsified, phony lease in connection with the Roosevelt Savings Bank, a transaction that I conclude involved more than the typical false statement violation.

Walsh contests each of those grounds.[4]

As for the lease, we have already rehearsed the evidence that clearly supports a determination that the lease was fake and was concocted solely to obtain the loan from Roosevelt. We must address, then, whether creating the phony lease involved "more planning than is typical for commission of the offense in a simple form." To resolve that question we first examine what a "simple form" of a Section 1014 violation would be. And to that end Walsh's loan application itself provides such an example: Walsh's representation that the down payment for the new house came from savings and was not borrowed (with the accompanying omission of the promissory note evidencing that obligation) and his lie about his income level alone constituted a "simple form" of the offense. All that Walsh's conduct in those respects entailed was filling in knowingly false information on the application.

By contrast, the concocted lease involved material added planning. Over and above Walsh's false loan application statement that he had leased the residence, he then had to locate a form lease, which he proceeded to modify in several places to reflect the "terms" of the bogus arrangement with D'Iorio and Ford,[5] and he then had both D'Iorio and his wife sign the document. Such detailed and deliberate action before Walsh's submission of the typed application and lease—although perhaps not a highly complex plot—certainly involved more planning than simply filling in false information on the application. And the situation is readily distinguished from the warehouse theft in *Cropper,* which we found to be "a spontaneous, reckless caper" insufficient to qualify for the increase in offense level (42 F.3d at 759).

■ What was involved in creating and submitting that phony lease could alone qualify as "more than minimal planning" for Guideline purposes. In addition, the district judge pointed for the same purpose to Walsh's other false loan applications "leading up to" the Roosevelt application. In that respect it has been definitively established that Walsh's jury acquittals on those other charges do not preclude the sentencing judge's consideration of the same conduct for Guideline purposes, in part because of the difference in the applicable standards of proof: preponderance of the evidence for sentencing purposes as against proof beyond a reasonable doubt for purposes of conviction (*United States v. Watts,* —— U.S. ——, —— & n. 2, 117 S.Ct. 633, 637 & n. 2, 136 L.Ed.2d 554 (1997)(per curiam)). And that being so, the sentencing judge may fairly consider the conduct that was the subject of a jury acquittal as part of the "more than minimal planning" analysis, as the district judge did here.

---

4. It is the government's position that the 2–level increase should be upheld if either of the two stated grounds is sustainable. That seems to be a stretch of what the sentencing judge said, and we will therefore treat with both of his assigned reasons.

5. Walsh made some detailed amendments to the form lease. Not only did he create a fake intended purpose for the lease—to house the wholly fictitious "relocated employees" of Ford—but he specified utilities such as gardening and exterminating for which Ford would purportedly be responsible at a specified (and equally fake) price per month.

In this instance Walsh could fairly be (and plainly was) perceived by the sentencing judge as satisfying the description of "more than minimal planning" under Guideline § 1B1.1 Application Note 1(f): "any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Though Walsh's other loan applications—which the sentencing judge also permissibly found to have contained a pattern of "false statements" and "misleading statements"—were not directly related to the Roosevelt loan, they were properly viewable by the judge as "relevant conduct" (see Guideline § 1B1.3(a)) in determining the existence of "repeated acts." That is, they met the test of "common scheme or plan" (*id.* § 1B1.3(a)(2); *Watts*, —— U.S. at ——, 117 S.Ct. at 636) because they were "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*" (Guideline § 1B1.3 commentary n. 9(A)). Here not just one but two such common factors were present—the common accomplice D'Iorio, and the common *modus operandi* of false financial statements and false documentation.

In sum, the district judge did not abuse his discretion in applying the "more than minimal planning" upward adjustment to the offense level. We find the 2–level increase in that respect was entirely reasonable.

### 2. Obstruction of Justice

Walsh also challenges the District Court's 2–level increase for obstruction of justice pursuant to Guideline § 3C1.1, which is operative:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense. . . .

Included in the list of examples of such obstruction of justice in Application Note 3 to Guideline § 3C1.1 is "committing, suborning, or attempting to suborn perjury." For that purpose the sentencing court must make an independent finding that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory" (*United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993)).

Walsh first contends that the district court did not apply the correct standard of proof in determining that Walsh had committed perjury at trial. Guideline § 3C1.1 Application Note 1 provides:

> In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant.

Although that evaluation is to be made under what sounds "indistinguishable from a clear-and-convincing standard" (see *United States v. Ruggiero*, 100 F.3d 284, 294 (2d Cir.1996) (internal quotation marks and citation omitted) and cases cited there), the sentencing judge's determination here fills the bill. In finding that Walsh had committed perjury, the district judge outlined Walsh's testimony at trial that the judge considered false and then said:

> The statements in question, as I've said, were false. They were obviously of material significance to the adjudication of that count. They were repeated frequently enough during the course of the testimony to lead me to conclude that they were not made as a result of confusion or inadvertence or anything of that sort, but they were, in fact, willful.

And when explaining his sentence to Walsh, the district judge said:

> I also had the opportunity to hear and observe you on the stand during the course of this trial, and I am constrained to say that I think you repeatedly perjured yourself on the stand.

We do not require that district courts recite any magic words to assure that they have applied the appropriate standard. Even though the district judge did not explicitly identify the standard of proof by which he found Walsh had committed perjury, because the evidence clearly supports that finding and because the tenor of the judge's ruling reflects his firm convictions on that

score, we have no doubt that the judge's finding passed the clear-and-convincing standard. In that respect, see the like determination in *United States v. Sobin*, 56 F.3d 1423, 1429 (D.C.Cir.1995)("Under the circumstances, we believe the court's emphatic language reflects its finding by clear and convincing evidence" that defendant perjured himself).

 Walsh also asserts that the district judge did not sufficiently particularize what part of Walsh's testimony was false. However, the judge clearly laid out the areas in which he found false testimony:

> I recall the testimony at trial, and I recently reviewed it, and I conclude that Mr. Walsh testified falsely at trial concerning the preparation of the documents that were submitted to Roosevelt Savings Bank; and that he testified falsely about his working relationship in connection with those documents with Ms. Neighbors, his former student, he testified falsely concerning her role in the preparation of those documents.

That together with the earlier-quoted finding that Walsh's false statements were both material and willful plainly meets the specificity requirement set out in *Dunnigan*, 507 U.S. at 95, 113 S.Ct. at 1117:

> [I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.

Thus the district court's finding of Walsh's perjury was both sufficiently specific and met a clear-and-convincing standard. Hence the 2-level increase in the offense level for obstruction of justice was also appropriate.

### Conclusion

Even if it were necessary under the circumstances to prove beyond a reasonable doubt that the falsehoods in Walsh's loan application to Roosevelt (a number of which Walsh himself acknowledged) were materi-

al—an issue that we need not decide—the evidence at trial was clearly sufficient to support a rational jury's conviction of Walsh under Section 1014. In addition, we find that the district court properly increased the base offense level in each of the two respects challenged by Walsh: the 2 levels based on a finding of more than minimal planning under Guideline § 2F1.1(b)(2)(A), and the 2 levels for obstruction of justice under Guideline § 3C1.1. We AFFIRM Walsh's conviction and sentence.