UNITED STATES of America, Appellee,

v.

**Richard H. KELLY, Defendant–Appellant.**

No. 97–1307.

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1998.

Decided June 18, 1998.

Meghan S. Skelton, U.S. Dept. of Justice, Tax Div., Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., Alan Hechtkopf, Robert E. Lindsay, U.S. Dept. of Justice, Tax Div., Zachary W. Carter, U.S. Atty., Washington, DC, of counsel), for Plaintiff-Appellee.

Stuart E. Abrams, New York City (Frankel & Abrams, of counsel), for Defendant–Appellant.

Before: VAN GRAAFEILAND, JACOBS and LAY,* Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Richard H. Kelly appeals from a judgment of the United States District Court for the Eastern District of New York (Hurley, *J.*) convicting him of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a). The district court sentenced Kelly to eighteen months in prison. We affirm.

From 1984 to 1988, Kelly, an experienced attorney and businessman, served as vice-president and general counsel of Intercontinental Monetary Corporation ("IMC"), a financial services company. Kelly left IMC in 1988 and, with an associate, organized a financial consulting business called D.M. Condor & Company, Inc. Prior to his departure, Kelly executed an agreement under which he agreed to provide consulting services to IMC from June 1, 1988 to June 30, 1990. In return, IMC agreed to pay him a consulting fee of $244,200.

The agreement specified that IMC would pay Kelly in two equal installments of $122,100, the first of which would cover services rendered from June 1, 1988 to June 30, 1989, and the second of which would cover services rendered from July 1, 1989 to June 30, 1990. In fact, however, IMC paid Kelly his entire fee before the beginning of the prescribed period of service, issuing him checks on November 5, 1987, February 16, 1988, and March 9, 1988. The parties agreed that these payments would be treated as advances on Kelly's fee and that IMC would consider the fee "earned" as of the dates specified in the original agreement.

Thereafter, in 1988, Kelly agreed with his associate to assign to Condor all of his rights and obligations under the IMC agreement. In a letter dated December 28, 1989, Kelly informed IMC of the agreement and requested that IMC issue to Condor any tax reporting forms stemming from the company's payment of Kelly's consulting fee. IMC acknowledged Kelly's request, but refused to honor it. Instead, in early 1990, IMC prepared and sent to Kelly an IRS Form 1099 indicating its payment to him of $122,100 as compensation for services rendered during the 1989 fiscal year.

Kelly filed his 1989 personal income tax return on April 16, 1990. On Schedule C of the return, Kelly reported as part of his gross receipts the $122,100 he received from IMC but indicated in an accompanying note that he had assigned this income to Condor. Based on this alleged assignment, Kelly deducted the $122,100 from his gross receipts and paid no tax on the IMC income.

In October 1991, Internal Revenue Agent Vincent Marcantonio began an audit of Kelly's 1989 tax return. In the course of this audit, Marcantonio met with Kelly on two occasions. During their first meeting, Kelly provided Marcantonio with copies of the two aforementioned agreements and explained that he had deducted the IMC income from his gross receipts because he had assigned the income to Condor. Kelly also informed Marcantonio that Condor did not file a tax

* The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

return in 1989. During their second meeting, Kelly reiterated his explanation of his treatment of the IMC income. Contrary to his earlier statements, however, Kelly told Marcantonio that Condor "picked up" the IMC income in 1989, a statement which Marcantonio took to mean that Condor had reported the income to the IRS for tax purposes. Following the second meeting, Marcantonio verified that Condor had not reported the IMC income in 1989. He also determined that Kelly had not transferred any of the IMC income to Condor. Marcantonio concluded that Kelly's deduction of the IMC income was improper and that his purported assignment of that income to Condor was a sham.

Based on Marcantonio's findings, the Government indicted Kelly. In Count One of the indictment, the Government charged Kelly with obstructing the due administration of the revenue laws by providing Marcantonio with a copy of the allegedly false and fraudulent assignment agreement in an effort to substantiate his deduction of the IMC income on his 1989 tax return. In Count Two, the Government charged Kelly with filing a false tax return. The jury convicted Kelly of obstruction, but acquitted him of filing a false return.

At the time Kelly was sentenced, the federal sentencing guidelines did not specify a particular guideline to be used in cases arising under section 7212(a). Over Kelly's objection, the district court applied section 2T1.1 of the guidelines, a section customarily applied in cases of tax evasion. Pursuant to that guideline, the court determined that Kelly's criminal activities resulted in a tax loss of approximately $68,000 (the amount he would have paid had he reported the entire $244,200 he received from IMC as income), warranting a base offense level of eleven. The court then added two levels for each of its findings that Kelly had used special skills to facilitate his crime and that he gave perjured testimony at trial. These findings yielded a potential sentence range of eighteen to twenty-four months. The court sentenced Kelly to the minimum term of eighteen months.

■ Kelly contends on appeal that he should not have been charged with violating section 7212(a) because Congress intended that statute to proscribe only threatening or harassing conduct directed toward IRS agents. In support of this contention, he asserts that a majority of the cases prosecuted under section 7212(a) have involved threatening or harassing conduct. However, even the complete absence of a reported decision involving similar factual circumstances does not determine *per se* the proper scope of a particular statute. *See United States v. Popkin*, 943 F.2d 1535, 1539 (11th Cir.1991) (citing *Parr v. United States*, 363 U.S. 370, 391, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960)).

■ The appropriate starting point for the interpretation of any statute is its language. *O'Connell v. Hove*, 22 F.3d 463, 468 (2d Cir.1994). *See United States v. Trapilo*, 130 F.3d 547, 551 (2d Cir.1997) (quoting *United States v. Wiltberger*, 5 Wheat. 76, 18 U.S. 76, 95–96, 5 L.Ed. 37 (1820) (Marshall, *C.J.*) ("The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction.")).

Section 7212(a) provides in part that any individual who:

> *corruptly* or by force or threats of force (including any threatening letter or communication) *endeavors to* intimidate or *impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly* or by force or threats of force (including any threatening letter or communication) *obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title,* shall [be guilty of a felony].

26 U.S.C. § 7212(a) (emphasis added). As the emphasized language makes clear, a defendant need not resort to force or the threat of force in order to be convicted of obstruction. Moreover, although the first clause pertains only to conduct directed against a government official, the second or "omnibus" clause is not so limited, and renders criminal "any other" action which serves to obstruct or impede the due administration of the revenue laws. In short, the plain language of

section 7212(a) does not support Kelly's narrow interpretation of the statute.

■ Kelly next contends that the district court's decision to charge him under section 7212(a) violated a policy statement issued by the Tax Division of the Department of Justice. That directive instructs officers of the Department not to utilize the omnibus clause of section 7212(a) "where other more specific charges are available and adequately reflect the gravamen of the offense." Kelly argues that there was a more specific and appropriate charge available to the Government in his case, namely tax evasion under section 7201, and that the Government should have prosecuted him under that statute rather than section 7212(a). We are not persuaded by this contention. As a general rule, "non-compliance with internal departmental guidelines is not, of itself, a ground of which defendants can complain." *United States v. Ivic,* 700 F.2d 51, 64 (2d Cir.1983) (citing *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)), *rev'd on other grounds, National Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). *Cf. Crandon v. United States,* 494 U.S. 152, 177, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring in judgment). Such guidelines provide no substantive rights to criminal defendants. *United States v. Piervinanzi,* 23 F.3d 670, 682 (2d Cir.1994). Moreover, the record does not support Kelly's claim of non-compliance.

Kelly characterizes his actions as "garden variety" tax evasion rather than obstruction. We disagree. Kelly's delivery of the Condor assignment agreement to Marcantonio did more than merely further a tax evasion scheme—it was designed to impede Marcantonio from uncovering a tax evasion scheme that already had been effectuated. It expanded and delayed the progress of Marcantonio's audit and investigation and thus can be characterized accurately as obstruction, rather than evasion.

■ Kelly suggests the district court's broad interpretation of the statute potentially could run afoul of the constitutional doctrines of overbreadth and vagueness. In support of his position, Kelly cites *United States v. Po-indexter,* 951 F.2d 369, 377–386 (D.C.Cir. 1991), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992), in which the court held, over the strong dissent of Judge Mikva, that use of the term "corrupt" in the more general obstruction-of-proceedings statute, 18 U.S.C. § 1505, rendered that statute unconstitutionally vague as applied. However, five other circuits have upheld the constitutionality of section 7212(a) in the face of claims similar to that presently posed by Kelly. These decisions are cited and discussed in the well-reasoned opinion of District Judge Gertner in *United States v. Brennick,* 908 F.Supp. 1004, 1010–13 (D.Mass. 1995). Finding the analyses in these opinions both pertinent and persuasive, we reach the same result.

■ We also reject Kelly's contention that "willfulness" is a necessary element of section 7212(a) and that the district court should have instructed the jury accordingly. In making this argument, Kelly relies upon *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), which involved 26 U.S.C. §§ 7201 and 7203. Unlike section 7212(a), both of these sections specifically require proof of willfulness. There is no single, universal definition of the word "willfully." *See, e.g., United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933), *overruled in part by Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52,70, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Usually, however, the varying definitions contain certain common general elements. When, as here, a court properly instructs a jury concerning these elements, it need not usurp the function of Congress by inserting the term "willfully" in a statute where Congress saw fit to omit it.

The key words in section 7212(a) are "corruptly" and "endeavors." *See United States v. Cioffi,* 493 F.2d 1111, 1118–19 (2d Cir.1974) (analyzing similar language in Obstruction of Justice Act, 18 U.S.C. § 1503). The district court instructed the jury that

To act corruptly is to act with the intent to secure an unlawful advantage or benefit either for one's self or for another.

This is a well-accepted definition of the term "corruptly" when used in this context. *See United States v. Hanson,* 2 F.3d 942, 946–47 (9th Cir.1993) and cases cited therein; *see also* BLACK'S LAW DICTIONARY 414 (4th ed. rev.1968).

The district court then defined "endeavors" as follows:

It means to knowingly and intentionally act or to knowingly and intentionally make any effort which has a reasonable tendency to bring about the desired result.

   \*    \*    \*    \*    \*    \*

A person acts knowingly if he acts intentionally and voluntarily and not because of ignorance, mistake, accident or carelessness.

   \*    \*    \*    \*    \*    \*

Before you can find that the defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully, that is, defendant's acts must have been the product of the defendant's conscious objective rather than the product of mistake or accident.

The district court's definition of the proof required for the section 7212(a) violation was as comprehensive and accurate as if the word "willfully" was incorporated in the statute. *See United States v. Barfield,* 999 F.2d 1520, 1524–25 (11th Cir.1993) (quoting *United States v. Haas,* 583 F.2d 216, 220 (5th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979)); *United States v. McLennan,* 672 F.2d 239, 243 (1st Cir. 1982). We are reluctant, therefore, to add the word "willfully" to section 7212(a), where Congress has seen fit to omit it. *Cf. Piervinanzi, supra,* 23 F.3d at 680.

Moreover, in view of the district court's correct charge concerning corrupt knowledge and intent, we find no error in the district court's failure to instruct on the irreconcilable theory of good faith.

██ Kelly contends for the first time on appeal that the Government's prosecution was barred by the statute of limitations. Because Kelly did not raise this claim in district court, we deem it waived. *See United States v. Walsh,* 700 F.2d 846, 855 (2d Cir.1983), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Arky,* 938 F.2d 579, 581–82 (5th Cir.1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). Even if we assume that the plain error standard enunciated in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), is applicable to Kelly's limitation defense, we nonetheless hold the defense to be without merit. The periods of limitation for offenses arising under the revenue laws are codified at 26 U.S.C. § 6531. For most such offenses, the period of limitation is three years. However, a longer, six-year period of limitation applies to certain offenses listed separately in the statute. Among these is "the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States)." 26 U.S.C. § 6531(6). Kelly contends that the parenthetical explanation which follows the reference in section 6531(6) to the obstruction statute reveals that Congress intended for the six-year limitation period to apply only to cases prosecuted under the first clause of section 7212(a), and that cases brought pursuant to the omnibus clause therefore remain subject to the shorter, three-year period. Both parties agree that under the three-year limitations period, Kelly's prosecution would have been barred.

This circuit has yet to determine the appropriate limitation period to be applied to cases brought pursuant to the omnibus clause of section 7212(a). However, at least two other circuits have concluded that the six-year period of limitation applies. *See United States v. Wilson,* 118 F.3d 228, 236 (4th Cir.1997); *United States v. Workinger,* 90 F.3d 1409, 1413–14 (9th Cir.1996). We hold that the district court's well-reasoned and unchallenged selection of the six-year limitation period did not constitute plain error.

██ Moving on to the matter of his sentence, Kelly contends that the district court erred when it utilized section 2T1.1 of the

federal sentencing guidelines to calculate it. Kelly contends that the court should have looked to former section 2T1.5, which prescribed the punishment for filing a fraudulent tax return. At the time of Kelly's sentencing, no specific guideline applied to cases involving convictions under section 7212(a). Generally, when no specific sentencing guideline is designated, the sentencing court must determine a defendant's sentence using the guideline it deems most applicable to the offense of conviction. *See* U.S.S.G. § 1B1.2(a) & comment. (n.1). Upon review, we are required to give due deference to the sentencing court's choice of guidelines, and may reverse only where we find that choice plainly unreasonable. *See United States v. Miller*, 116 F.3d 641, 677–78 (2d Cir.1997). The district court felt that Kelly's conduct involved more than simply filing a fraudulent return. Because this was not an unreasonable determination, we conclude that the district court did not err when it relied on section 2T1.1 to determine Kelly's sentence.

■ Kelly next challenges the district court's enhancement of his sentence based on its finding that Kelly's criminal activities resulted in a tax loss. Kelly contends that this finding was inconsistent with the jury's verdict acquitting him on the charge of filing a false tax return. We disagree. The fact that Kelly was acquitted of one charge did not preclude the sentencing court from relying on evidence introduced in connection with that charge. *See United States v. Watts*, 519 U.S. 148, ——, 117 S.Ct. 633, 636, 136 L.Ed.2d 554 (1997) (per curiam); *United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 180–82 (2d Cir.1990), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

■ Alternatively, Kelly contends that the evidence simply did not support the district court's finding of a tax loss. In support of this argument, Kelly directs our attention to the testimony of his expert tax accountant, who indicated that Kelly's treatment of his assignment to Condor on his tax return was fundamentally correct. In response, the Government contends that while Kelly's professed treatment of the IMC income might have been technically correct, the fact remains that Kelly did not transfer any of the IMC money to Condor, and that neither he nor Condor paid taxes on the income; Kelly, as the recipient of that income, was responsible for paying taxes on it, and his failure to do so resulted in a tax loss for which he properly was held liable.

■ Kelly next challenges the district court's enhancement of his sentence based on its finding that he utilized a special skill, namely his legal background, to facilitate his commission of obstruction. Kelly insists that he possesses no expertise in the area of tax law; quite to the contrary, he suggests that it was his lack of knowledge regarding the applicable tax laws that led him to commit the acts for which he ultimately was convicted. We are not persuaded. Kelly's obstruction conviction stemmed from his providing Marcantonio the assignment which Kelly himself had prepared. The district court did not err in finding that Kelly thus utilized his skill as a licensed and experienced attorney to facilitate his criminal activity.

■ Finally, Kelly challenges the district court's two-level enhancement of his sentence pursuant to section 3C1.1 for obstruction of justice by committing perjury during the trial. In order to enhance a defendant's sentence for obstruction of justice in this manner, the sentencing court must determine by clear and convincing evidence that the defendant "gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Walsh*, 119 F.3d 115, 121 (2d Cir.1997) (internal quotations omitted) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)). *See also* U.S.S.G. § 3C1.1 & comment. (n.1). Moreover, the court must find that the defendant's statements unambiguously demonstrate an intent to obstruct. *See United States v. Sisti*, 91 F.3d 305, 313 (2d Cir.1996); *see also Walsh, supra*, 119 F.3d at 121; *United States v. Ruggiero*, 100 F.3d 284, 294 (2d Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 1102, 140 L.Ed.2d 156 (1998). The district judge repeatedly acknowledged his obligations in this respect:

I have to find that the defendant made deliberate or provided false information deliberately to the jury—to the Court on a material matter for the purpose of basically trying to prevent himself from being convicted or for whatever. There's a materiality. I have to make an independent finding. And I think it is appropriate that if the Court does so, that the Court do that with some type of specificity.

I think it would be unfair, if not contrary to Circuit precedent, to give an opinion in a conclusory nature. I think I'm required, if I find that obstruction of justice, to provide some specificity.

\* \* \* \* \* \*

Moreover, the Court does have an obligation, if it finds an obstruction of justice, to make an independent inquiry and determination.

Moreover, I believe there is authority in the Second Circuit that in making such a determination the standard of proof is heightened.

\* \* \* \* \* \*

Here, because of the impact that an obstruction determination has or a prospective determination has on the defendant's right to take the stand and testify, the appropriate standard is clear and convincing.

Also, it should be noted that in making this determination to the extent there's ambiguity, it should really be resolved in favor of the defendant.

\* \* \* \* \* \*

On the other item that I mentioned, the testimony that he provided to the jury in the Court's opinion concerning why he didn't file the DMC returns, I found that testimony to be clearly untruthful. It was done in an effort to explain that which was unexplainable.

It pertained to a very material matter, because if the jury was to believe him, they had to understand, or at least he so perceived, apparently, why the money that went into his pocket and went into his bank account and which supposedly became the obligation of DMC to report, given his contact with DMC, he had to explain why DMC never reported the income.

Now, we know that the investigation wasn't underway until 1991. Given when this information should have been reported, which would apparently be on the '89 tax return of DMC or the 1990, but certainly prior to 1991, his explanation makes no sense. That, in and of itself, is not enough.

This, in my judgment, represented a material matter testified to by the defendant falsely, with his knowledge of the falsity. I believe he deliberately provided that information to the jury for the purpose of obstructing the administration of justice. More particularly he was trying to confuse the jury. He was trying to prevent the jury from finding him guilty concerning the charges in the indictment.

In the light of the district judge's recognition of the applicable law and his emphatic finding of materially false testimony, we find no error in his conclusion "by clear and convincing or even beyond a reasonable doubt standard that [Kelly] obstructed justice or endeavored to do so." *See Walsh, supra,* 119 F.3d at 122.

The judgment of the district court is affirmed.