**UNITED STATES of America,**
**Appellee,**

v.

**John PETRUCELLI, Defendant–**
**Appellant.**

No. 03–1100.

United States Court of Appeals,
Second Circuit.

May 12, 2004.

**356**

David A. Ruhnke, Ruhnke & Barrett, Montclaire, NJ, for Appellant.

David Raskin, Assistant United States Attorney (Gary Stein, Assistant United States Attorney, on the brief) for David N. Kelley, United States Attorney for the Southern District of New York, for Appellee.

Present: OAKES, B.D. PARKER, Circuit Judges. and KORMAN,[1] District Judge.

1. The Honorable Edward R. Korman, Chief Judge, United States District Court for the Eastern District of New York, sitting by designation.

1. The judge's instructions stated, in pertinent part:

> [18 U.S.C. § 1959(b)(2)] contains a definition of enterprise and the full definition mentions several kinds of things that can constitute an enterprise, but only one part of the definition is relevant to our case. The statute defines enterprise to include any group of individuals associated in fact, although not a legal entity – in other words, it doesn't have to be a corporation or a partnership. It simply has

**SUMMARY ORDER**

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED and the appeal is dismissed.

Appellant–Defendant John Petrucelli appeals from a judgment of conviction on one-count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), following a two-week jury trial in the United States District Court for the Southern District of New York (Thomas P. Griesa, *J.*).

Petrucelli raises numerous issues on appeal, principally, that: 1) the District Court provided inadequate instructions to the jury regarding the existence of an enterprise, 2) the District Court permitted the government to introduce evidence on several occasions in violation of the Federal Rules of Evidence, 3) the prosecution was time-barred, 4) and a new trial is warranted because the jury should have been allowed to consider a lesser included offense of manslaughter. We reject each of Petrucelli's claims.

Petrucelli contends that the district judge, in his closing instructions, failed to define the "enterprise" element of the offense completely or accurately, and instead provided only "a deficiently minimalist explanation."[1] Specifically, he asserts that

> to be any group of individuals associated together, in fact, although not a legal entity.
> Before you came to court and perhaps before you heard the discussion in this case, you may have thought of an enterprise as really generally consisting of a very substantial legitimate business organization. But the statute does not limit the concept of enterprise for the purpose of this law to such substantial organizations. As I have said, it defines enterprise to include any group of individuals associated together.
> Now the meaning of enterprise in this statute becomes clear when we recall that the statute speaks of an enterprise

the judge's explanation of "enterprise" omitted the element of continuity, and that the judge consequently erred in rejecting defense counsel's request to add the following supplemental language:

An enterprise also includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit.

Trial Tr. at 1363–64 (reciting 3 L.Sand, et al., MODERN FEDERAL JURY INSTRUCTIONS ¶ 52.07 at p. 52–71).

We review jury charges de novo. United States v. Han, 230 F.3d 560, 565 (2d Cir.2000) (internal citations and quotation marks omitted). Nonetheless, a defendant "cannot dictate the precise language of the charge," and "if the substance of a defendant's request is given by the court in its own language, the defendant has no cause to complain." Id. In assessing whether a delivered charge was erroneous, we must "review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." United States v. Carr, 880 F.2d 1550, 1555 (2d Cir.1989) (internal quotation marks omitted). In addition, "[w]e will not reverse a conviction on the grounds of faulty jury instructions unless the defendant demonstrates prejudice." United States v. Orena, 32 F.3d 704, 713 (2d Cir.1994).

Taken as a whole, we find that the judge's charge conveyed the concept of an enterprise accurately. The judge instructed that the purpose of the charging statute was to "deal with groups that associate together and create an enterprise ... engaged in criminal or racketeering activity." Trial Tr. at 1343. The judge explained several times that the purpose of the alleged enterprise had to be engaging in crime. Id. at 1341–42. The judge explicitly required the jury to find "that there was a Tanglewood Boys, so to speak, group, devoted to criminal activity." Id. at 1343. In light of these instructions, it is unlikely that a rational jury could have found the existence of an enterprise without first inferring the requisite element of continuity. In any event, assuming the alleged error occurred, we are not persuaded that Petrucelli suffered prejudice. Indeed, the overwhelming weight of evidence regarding the ongoing existence of the alleged enterprise and its criminal activities is fatal to any claim of prejudice. Not only did the government introduce evidence re-

engaged in racketeering activity. So enterprise means any group of people associated together in any way, however informal, whether young people, old people, or any kind or a variety of persons, when such a group is engaged in racketeering activity.... So an enterprise engaged in racketeering activity simply means a group of people engaged in any of the crimes named above that I've named....

It is sufficient for the enterprise to engage in crimes if the group are associated together and if the group has a common objective or purpose of committing such crime or crimes ... You must find that the Tanglewood Boys was an enterprise engaged in racketeering activity; that is, a group of people associated together for the purpose of engaging in one or more of the crimes that I have listed.

. . . .

[I]f some people in that shopping center, in that area or even some people in the group were simply playing basketball and doing nothing more, they wouldn't be part of the Tanglewood Boys as a criminal racketeering enterprise. So you must find that there was, as I've indicated in the first element, that there was a Tanglewood Boys, so to speak, group, devoted to criminal activity.

Trial Tr. at 1339–43.

garding multiple criminal acts committed by members of the group, the government also established that the group ran a substantial bookmaking and loan sharking operation from 1991 to 1996. Against such evidence, there is little concern that a jury might have, as Petrucelli suggests, returned "a guilty verdict based on a series of *ad hoc* criminal episodes involving Appellant and others that did not have the element of continuity." Appellant's Br. at 14–15. For these reasons, we conclude that the District Court's jury instruction was adequate.

■ Next, Petrucelli contends that at trial the District Court improperly admitted various evidence. First, he asserts that the judge erred in allowing overly prejudicial evidence of uncharged criminal conduct, including instances of theft, armed robbery, possession of firearms, bar fights, bookmaking, and loansharking, in violation of Federal Rule of Evidence 404(b).[2] Because Petrucelli's counsel failed to object to either the court's pretrial ruling on the uncharged crimes or the evidence as it was admitted to trial – and he further failed to request a limiting instruction to the jury – we review his claim for plain error. *United States v. Aleskerova*, 300 F.3d 286, 295–96 (2d Cir.2002). It is well-established that an act done in furtherance of a racketeering enterprise is not an " 'other' act within the meaning of 404(b)" because "it is part of the very act charged." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999). Evidence of uncharged criminal conduct may be properly introduced in racketeering prosecutions in order to establish the existence, organization, nature, and membership of the alleged criminal enterprise. *See Diaz*, 176 F.3d at 80 (2d Cir.1999); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir.1997); *United States v. Wong*, 40 F.3d 1347, 1378 (2d Cir.1994).[3] Since the admitted evidence constituted proof of the alleged racketeering enterprise and Petrucelli's role within that enterprise, we find no plain error.

Petrucelli also argues that the admission of the criminal acts was unfairly prejudicial in violation of Federal Rule of Evidence 403. However, a "district court is obviously in the best position to do the balancing mandated by Rule 403. We will second-guess a district court only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally. To avoid acting arbitrarily, the district court must make a conscientious assessment of whether unfair prejudice substantially outweighs probative value." *United States v. Salameh*, 152 F.3d 88, 110–11 (2d Cir.1998) (internal citations and quotation marks omitted). There is no clear showing here that the District Court abused its discretion or acted arbitrarily or irrationally to admit the evidence. The court carefully evaluated the criminal acts proffered by the government and made a conscientious assessment regarding each one. As a result of the court's analysis, several crimes that the court judged to be overly prejudicial, namely, two murders and an attempted murder, were not admitted. Accordingly, we find that the admission of the uncharged criminal conduct did not constitute an abuse of the court's discretion.

---

**2.** Federal Rule of Evidence 403(b) states:
 Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prep-

aration, plan, knowledge, identity, or absence of mistake or accident. . . .

**3.** This holds true for prosecutions under 18 U.S.C. § 1959 for committing a violent crime in aid of racketeering. *Diaz*, 176 F.3d at 75, 79–80.

Second, Petrucelli challenges the District Court's admission of hearsay evidence—pursuant to the hearsay exception for coconspirator statements[4]—regarding the reaction by the Luchese and Genovese Crime Families to the murder victim's death, and their ensuing discussions regarding how the issue should be resolved. Of course, "[w]e will not disturb a district court's findings on [the admissibility of evidence under the coconspirator exception] unless they are clearly erroneous." *Id.* Here, we find no clear error in the admission of the challenged evidence because there was ample proof that a conspiracy, whose members included Petrucelli, existed to resolve the consequences of his criminal act, and that the statements were made during and in furtherance of that conspiracy. *See United States v. Gigante*, 166 F.3d 75, 82 (2d Cir.1999).

■ Third, Petrucelli argues that the court should not have admitted—pursuant to the excited utterance exception[5]—the hearsay statement of a witness claiming that the murder victim identified Petrucelli as the perpetrator. Given that the murder victim had been stabbed just minutes prior to making the challenged statement, and was almost certainly in a physical state of shock at the time of utterance, we conclude that the exception applies and the court did not abuse its discretion in admitting the statement.

With respect to Petrucelli's remaining challenges to other evidentiary decisions by the District Court, we find them to lack merit.

Petrucelli argues that, since the indictment against him was initiated more than five years after the murder occurred, the prosecution was time-barred by the applicable five-year statute of limitations. 18 U.S.C. § 3282. An exception to the statute of limitations is provided under 18 U.S.C. § 3281 for "any offense punishable by death." Petrucelli contends that this exception is inapplicable because none of the aggravating factors which would have justified a death sentence apply to him, and because his indictment did not allege capital murder.

■ The record indicates that Petrucelli never asserted a statute of limitations defense in the District Court. Accordingly, on appeal, he has waived the claim, *United States v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998), and any error must be reviewed for plain error, *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir.1980). With respect to the merits, the government argues that the applicability of § 3281 should be determined by reference to the nature of the offense rather than whether the death penalty was sought or procedurally available. In *United States v. Kostadinov*, 721 F.2d 411 (2d Cir.1983) (per curiam), we construed language identical to § 3281 in the context of a bail statute authorizing detention for a person charged with an "offense punishable by death." *Kostadinov* held that, irrespective of whether the death penalty was sought by the government, the appellant's crime was properly categorized as being punishable by death simply because the death penalty was authorized by the statute under which the appellant was charged. In accordance with *Kostadinov*, we find that

---

4. Federal Rule of Evidence 801(d)(2)(E) exempts any "statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

5. Federal Rule of Evidence 803(2) defines an excited utterance as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

360

18 U.S.C. § 1959(a)(1) describes an offense "punishable by death" within the meaning of 18 U.S.C. § 3281. We therefore conclude that there was no statute of limitations error, and certainly no "plain" error, with respect to the timing of this prosecution.

▮ Finally, Petrucelli argues that the jury should have been given the option of returning a manslaughter verdict because manslaughter would have been a lesser included offense if he had been tried for murder in a New York state court. Petrucelli's argument is foreclosed by *United States v. Diaz*, 176 F.3d 52, 101 (2d Cir. 1999), where the appellant argued, as Petrucelli does here, that manslaughter should be available to the jury because the predicate murder offense was charged under state law, and state law provided for manslaughter as a lesser included offense to murder. *Diaz* rejected this argument on the ground that murder in aid of racketeering was "a distinct substantive offense" from murder under state law, and was "not simply a federalized version of the state crime." *Id.*

We have considered Petrucelli's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.